2008 OK 65

**Michael GLASCO, an individual, Plaintiff/Appellant,**

**v.**

**STATE of Oklahoma ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS and State of Oklahoma ex rel. Oklahoma Department of Corrections, Southeast District Community Corrections, Defendants/Appellees.**

No.  105,251.

Supreme Court of Oklahoma.

July 1, 2008.

As Corrected July 7, 2008.

Charles C. Vaught, Armstrong & Lowe, Tulsa, OK, for appellant.

Kevin L. McClure, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, OK, for appellee.

TAYLOR, J.

¶1 The dispositive issue in this appeal is whether the trial court erred in granting summary judgment in favor of the defendant/appellee, State of Oklahoma ex rel. Department of Corrections (DOC). The substantive legal contests concern the construction and constitutionality of a provision in 74 O.S.Supp.2002, § 840–2.21(D). Section 840–2.21(D) gives a state employee who has a work-related illness or injury the right to return to his or her original position, and the right exists for one year after the employee has been placed on leave without pay. Section 840–2.21(D) also permits the state employer to discharge the employee after having been on leave without pay for a year notwithstanding the workers compensation statutes. Plaintiff/appellant, Michael Glasco (Glasco), attacked the constitutionality of the provision allowing the state employer to discharge the employee after a year of leave without pay. Glasco argued the provision is a discriminatory special law prohibited by the Okla. Const., art. V, §§ 46 and 59, and it restricts a state employee's access to the courts contrary to the Okla. Const., art. II, § 6. We conclude the challenged provision in 74 O.S.Supp. 2002, § 840–2.21(D) is not discriminatory, it is not a special law prohibited by art. V, §§ 46 or 59, and it does not restrict access to the courts contrary to art. II, § 6. We also conclude the material facts that defeat Glasco's retaliatory discharge claim against DOC are undisputed and DOC is entitled to judgment as a matter of law. Accordingly, we affirm the district court's journal entry denying plaintiff's motion for partial summary judgment and sustaining defendant's motion for summary judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

¶2 The evidentiary material in the appellate record establishes the following undisputed facts. At all relevant times, Glasco was a full-time classified employee in the permanent workforce of DOC. Beginning in March of 2000, Glasco worked as a correctional security officer. In May of 2003, Glasco underwent hand surgery and was unable to use his left hand, wrist and arm for approximately six months. DOC placed Glasco on leave without pay during most of that six-month recovery period. Glasco returned to work on November 17, 2003. Glasco was driving a DOC bus on U.S. Highway 270 in Hughes County on November 17th when the bus was rear-ended. Glasco sustained a back injury and was unable to return to work. On November 21, 2003, DOC placed Glasco on leave without pay and filed the employer's first notice of injury with the Workers' Compensation Court. For more than a year thereafter, Glasco received workers' compensation temporary total disability (TTD) benefits, in accordance with 85 O.S.2001, § 22, and remained on leave without pay as authorized in 74 O.S.Supp.2002, § 840–2.21.

¶3 On November 23, 2004, DOC sent Glasco written notice of a pre-termination hearing scheduled for December 7, 2004, to determine if he should be terminated for failure to return to work. The notice advised that the evidence establishing the grounds for termination included 1) a November 11, 2004 physician's report from Dr. Hendrix stating Glasco was unable to return to work, 2) time and leave records, and 3) workers' compensation records. The notice specified the statute, Merit Rules, and DOC written policy authorizing the termination.[1] Glasco admitted he received the pre-termination hearing notice and he did not complain about any

---

1. The pre-termination letter quoted the provision on termination in DOC's written policy numbered OP–110345:
    Section V. Failure to Return to Work
    B. *Termination* [74 O.S. § 2.21D, Merit Rule 530:10–15–49(j)(2) and (3)]
    An employee who does not return to work in either the original or an alternate position

within 1 year after the start of leave without pay may be terminated under the authority of 74 O.S. § 840–2.2 and following due process as provided by Merit Rule 455:10–11–17 and OP–110415 entitled "Progressive Disciplinary Procedure".

irregularity in the notice, the pre-termination hearing,[2] or other due process requirement.

¶4 On December 21, 2004, Glasco received DOC's termination letter dated December 17, 2004. The letter advised that Glasco's employment with DOC "is terminated effective January 3, 2005," for his "inability to perform the duties of the position in which employed" and cited Merit Rule 455:10–11–14 (causes for discharge) and quoted DOC's written policy on termination.[3] The termination letter described the grounds for termination: "You were placed on worker's compensation leave without pay on November 21, 2003, and you have not returned to your original or alternate position. The agency has received no information which indicates whether or when you will be able to resume your duties." The letter advised the termination was based on the November 11, 2004 physician's report from Dr. Hendrix and a December 9, 2004 physician's report from Dr. Adham that stated Glasco was "not able to return to work as a correctional officer." It also advised of the right to appeal to the Oklahoma Merit Protection Commission within twenty calendar days from receipt of the letter.

¶5 Glasco received the termination letter on December 21, 2004. He did not appeal his termination to the Merit Protection Commission under 74 O.S.2001, § 840–6.5. In January and February of 2005, Glasco's treating physicians released him to return to work. In March of 2005, Glasco filed a notice of tort claim with DOC pursuant to the Governmental Tort Claims Act (GTCA), 51 O.S.2001, §§ 151 et seq. In April of 2005, Glasco's tort claim was denied. In May of 2005, Glasco filed suit against DOC in the district court,[4] alleging retaliatory discharge and seeking actual and punitive damages.

¶6 DOC moved for summary judgment, arguing that 74 O.S.Supp.2002, § 840–2.21(D) clearly authorizes a state employer to discharge an employee who has been on leave without pay for a year or more notwithstanding the workers' compensation laws.[5] Glasco responded and moved for partial summary judgment, arguing that the 2002 version of § 840–2.21(D) targets state employees for treatment different from the entire class of "injured workers receiving TTD benefits" and thus is a special law prohibited by the Okla. Const., art. V, §§ 46 and 59. Glasco also argued § 840–2.21(D) denies state employees access to the courts to pursue a retaliatory discharge remedy contrary to the Okla. Const., art. II, § 6.

¶7 The district court denied Glasco's motion for partial summary judgment and sustained DOC's motion for summary judgment. Glasco timely appealed, asserting error in the district court's denial of his motion for summary judgment and reasserting the constitutional issues. We granted Glasco's motion to retain the appeal.

## II. STANDARD OF REVIEW

¶8 We review rulings on issues of law by a *de novo* standard pursuant to the plenary power of the appellate courts and without deference to the trial court. *Gladstone v. Bartlesville Indep. School Dist. No. 30*, 2003 OK 30, ¶5, 66 P.3d 442, 446. Summary judgment disposes solely of issues of law and is reviewed *de novo*. *Murg, Jr. v.*

2. The appellate record reveals no information relating to the administrative pre-termination hearing.

3. The text of the policy is set out in note 1, supra.

4. Glasco filed his governmental tort claim in the district court in Hughes County. DOC objected to venue and the case was transferred to the district court in Oklahoma County.

5. In its summary judgment request, DOC also argued that a classified state employee's right to appeal his or her discharge to the Merit Protection Commission is an exclusive remedy that must be exhausted before a suit may be maintained in the district court. The trial court did not expressly rule on this argument, and the argument is not relevant to any of the issues raised in this appeal. Further, DOC presented no authority to the trial court to support its assertion that the right of appeal to the Merit Protection Commission is exclusive and bars district court jurisdiction to entertain retaliatory discharge claims. This Court has already determined that a retaliatory discharge claim can only be litigated in the district courts. *Gunn v. Consolidated Rural Water & Sewer Dist. No. 1, Jefferson County, OK*, 1992 OK 131, ¶9, 839 P.2d 1345, 1349–1350. Accordingly, we do not consider DOC's exclusive-remedy-that-must-be-exhausted argument in this appeal.

*Barnsdall Nursing Home,* 2005 OK 73, ¶ 13, 123 P.3d 21, 25; *Manley v. Brown,* 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 455, n. 30. Summary judgment is proper only when the pleadings and the evidentiary materials before the trial court establish every fact material to the merits of the movant's claim or defense and there is no dispute as to each and every material fact and any inference that may be drawn therefrom. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n,* 1998 OK 113, ¶ 8, 980 P.2d 109, 113. In reviewing a summary judgment, the appellate court has an affirmative duty to test the legal sufficiency of all evidentiary material submitted on summary judgment and to view all the facts and inferences in the light most favorable to the non-movant. *Id.* A summary judgment will be affirmed where each and every material fact is undisputed and the law favors the movant's claim or defense. *Id.*

## III. THE INTERACTION BETWEEN 85 O.S.2001, § 5(B) AND 74 O.S.SUPP.2002, § 840–2.21(D)

¶ 9 The legal issues in this appeal are grounded in two statutory regimes. One is the commonly-named retaliatory discharge law, 85 O.S.2001, §§ 5–7, in the Workers' Compensation Act (WCA), 85 O.S.2001, §§ 1 et seq. The other is the state personnel statute that provides for state employees with work-related illness or injury to be placed on leave without pay status, 74 O.S.Supp.2002, § 840–2.21, in the Oklahoma Personnel Act (OPA), 74 O.S.2001, §§ 840–1.1 et seq. These statutes are set out in the appendix.

¶ 10 The retaliatory discharge statutes were enacted and codified in the WCA in 1976.[6] As originally enacted, the statutes prohibited retaliatory discharge of an employee for participation in workers' compensation proceedings in § 5, provided for damages and reinstatement in § 6, and vested jurisdiction in the district courts to restrain employer violations in § 7.[7] The prohibition against discharging an employee during a period of TTD based solely on absenteeism was added as subsection (B) of § 5 in 1992.[8] Subsection (B) of § 5 has not been amended since its enactment, and the 2001 codification of § 5(B) is applicable in this case. The obvious object of the retaliatory discharge statutes is to provide rights and benefits to employees that were not recognized by the common law at-will employment doctrine.[9] *Ingram v. Oneok, Inc.,* 1989 OK 82, 775 P.2d 810, 813.

¶ 11 In 1988, the Legislature added the leave without pay statute to the OPA.[10] The statute was originally codified at 74 O.S.Supp.1988, § 840.7b and later renumbered § 840–2.21. The statute required a state employer to place a state employee who had a work-related illness or injury on leave without pay status, allowing the employee to avoid a break in service, to continue insurance coverage, and to have first preference to return to the original position or for re-employment. The obvious object of the statute is to preserve for the state employee who has a work-related illness or injury both the state employment position and the state benefits. In 2002, the Legislature amended the statute to permit the discharge of an employee who has been on leave without pay status for a year notwithstanding the provisions of the workers' compensation law.[11] The 2002

6. 1976 Okla. Sess. Laws, ch. 217.

7. This Court interpreted the phrase "to restrain violations" to be synonymous with "to redress" and ruled that the right to damages for wrongful refusal to retain or reinstate a worker within the retaliatory discharge statutes may be litigated only in the district court. *WRG Const. Co. v. Hoebel,* 1979 OK 125, ¶ 8, 600 P.2d 334, 336–337.

8. 1992 Okla. Sess. Laws, ch. 294, § 3.

9. At-will employment means the master may hire or discharge at will and the servant may work or refuse to work at will. The at-will employment doctrine applies to employment contracts that have no definite duration and recognizes that either the master or servant may end the employment at will. *Foster v. Atlas Life Ins. Co.,* 1931 OK 617, 6 P.2d 805, Syllabus, Nos. 1, 2.

10. 1988 Okla. Sess. Laws, ch. 199, § 1.

11. 2002 Okla. Sess. Laws, ch. 347, § 8. In 2004, the Legislature amended § 840–2.21, but did not change the provision allowing discharge of an employee on leave without pay for a year or more. 2004 Okla. Sess. Laws, ch. 312, § 8.

version, 74 O.S.Supp.2002, § 840–2.21(D), is challenged in this case.

¶ 12 Both the retaliatory discharge statute, § 5 of the WCA, and the leave without pay statute, § 840–2.21 of the OPA, provide rights and benefits to employees that were not recognized by the common law and accordingly should be construed to promote their respective objects. 12 O.S.2001, § 2. The legislative intent is apparent from a reading of the these statutes in their entirety.[12] The leave without pay statute not only preserves specific state employment rights and benefits to state employees who have work-related illness or injury but also allows termination of the injured worker who has been on leave without pay for a year. The retaliatory discharge statute not only prohibits retaliation against any employee for exercising rights under the WCA but also strictly prohibits the discharge of any employee during a period of TTD solely on the basis of absenteeism.

¶ 13 State employees are included within the reach of the retaliatory discharge statutes by the WCA's definitions. 85 O.S.2001, § 3(8) (defining "employee" to include any person employed by the departments, instrumentalities and institutions of this state); *Gunn v. Consolidated Rural Water & Sewer Dist. No. 1*, 1992 OK 131, ¶ 12, 839 P.2d 1345, 1351. Accordingly, Glasco argued that the discharge of a state employee receiving TTD benefits under § 840–2.21(D) is discriminatory under § 5(B).[13] The gist of his argument is that the provision in § 840–2.21(D) continues to conflict irreconcilably with § 5(B) as this Court determined before the 2002 amendment. *Upton v. State ex rel. Oklahoma Dept. of Corrections*, 2000 OK 46, 9 P.3d 84.

¶ 14 The *Upton* case was an appeal to the district court from the Oklahoma Merit Protection Commission, which we reviewed on certiorari. The basic facts in *Upton* were similar to the instant case in that the DOC discharged Upton after he had been on leave without pay for more than a year and while he was receiving TTD benefits. The legal issue in *Upton* was whether DOC could discharge Upton under § 840–2.21(D) in light of the 1992 amendment which added subsection (B) to 85 O.S.1991, § 5. *Upton* determined that there was an irreconcilable conflict between § 840–2.21(D) and § 5(B) and that the later-in-time enactment, 85 O.S.Supp.1992, § 5(B) repealed the earlier-in-time, 74 O.S.Supp.1988, § 840–7b(D) (renumbered as § 840–2.21(D)).

¶ 15 DOC, on the other hand, argued that the Legislature, in 2002, in response to our *Upton* opinion, amended § 840–2.21(D) to specifically exclude a state employer from the prohibition in 85 O.S.2001, § 5(B) and to allow a state employer to discharge a state employee who is receiving TTD benefits when the employee has been on leave without pay status for a year. The Legislature did so, according to DOC, by adding the language "Notwithstanding the provisions of Section 1 et seq. of Title 85 of the Oklahoma Statutes," to the provision expressly permitting the discharge of a state employee who has been on leave without pay for a year. With this added proviso, DOC argued, the Legislature intended to revoke and render void our *Upton* opinion.

¶ 16 Our review of these statutes for irreconcilable conflict is guided by well-

---

This opinion cites the 2002 Supplement rather than the most recent 2007 Supplement to the Oklahoma Statutes.

**12.** The full text of the leave without pay statute and the retaliatory discharge statutes are set out in the appendix.

**13.** Glasco argued that the 2002 amendment to § 840–2.21(D) discriminates against state employees by leaving them with less protection than that available to an at-will employee, citing *Burch v. State ex rel. Okla. Dept. of Human Services*, 2007 OK CIV APP 71, 166 P.3d 502. The *Burch* decision turned on the date of the injury

and is not applicable here. In *Burch*, the work-related injury occurred on February 5, 1999, and on April 2, 2003, while she was receiving TTD benefits, she was terminated on the sole basis of absenteeism under the 2002 amendment to § 840–2.21(D). The Merit Protection Commission affirmed the termination, and on appeal, the district court reversed and vacated the discharge. The Court of Civil Appeals affirmed the district court ruling that the injured worker's substantive rights under the WCA vested at the time of her injury and that the later-in-time amendment to § 840–2.21(D) did not apply.

established rules of statutory construction. The primary goal in reviewing a statute is to ascertain legislative intent, if possible, from a reading of the statutory language in its plain and ordinary meaning. *State ex rel. Oklahoma State Dept. of Health v. Robertson*, 2006 OK 99, ¶ 6, 152 P.3d 875, 877–878. If the intent is plainly expressed and the statutory provision is uncontrolled by other parts of the statute or other statutes upon the same subject, there is no room for further inquiry. *McNeill v. City of Tulsa*, 1998 OK 2, ¶ 9, 953 P.2d 329, 332. As we previously set out, the intent and purpose of the retaliatory discharge statute is to protect employees not only from retaliatory discharge but also from discharge while temporarily totally disabled, and the intent and purpose of the leave without pay statute is to protect state employees from discharge for a period of only one year from the start of leave without pay and to allow the employee to be discharged thereafter.

¶ 17 Where a plain reading leads to inconsistency between the provisions in statutes on the same subject, the conflicting provisions dealing with the same subject will be harmonized to give effect to both. *Id.* In construing conflicting statutory provisions, the courts will consider together the various provisions in the relevant statutes in harmony with the purpose. *Id.* at ¶ 9, 953 P.2d at 332. If there is a conflict between two statutes on the same subject and the language in one statute is general while the language in the other is specific, the specific statute will control over the general statute. *Phillips v. Hedges*, 2005 OK 77, ¶ 12, 124 P.3d 227, 231. Here, § 840–2.21 specifically provides for the rights and benefits of state employees who have a work-related illness or injury, and § 840–2.21(D) will control over more general statutes. Additionally, any conflict between § 840–2.21(D) and § 5(B) is removed, and the statutes harmonized by giving force and effect to the proviso added by the 2002 amendment to § 840–2.21(D): "Notwithstanding the provisions of Section 1 et seq. of Title 85 of the Oklahoma Statutes." The proviso can only mean that § 840–2.21(D) shall govern instead of § 5(B) when a state employee has been on leave without pay for a year.

¶ 18 Based on the foregoing, we agree with DOC's argument that the Legislature intended to revoke and render void our *Upton* opinion. The opinion in *Upton v. State ex rel. Oklahoma Dept. of Corrections,* 2000 OK 46, 9 P.3d 84, no longer has any precedential effect.

## IV. THE CLASSIFICATION OF "STATE EMPLOYEES"

¶ 19 Glasco argued that his discharge under § 840–2.21(D) is a special law regulating the practice or jurisdiction of the courts contrary to the Okla. Const., art. V, §§ 46 and 59. According to Glasco, § 840–2.21(D) violates art. V, §§ 46 and 59 by targeting the subclass of "injured state workers" who are members of an indivisible class of "injured workers" for disparate procedural treatment by withholding a remedy from "injured state workers."

¶ 20 The Oklahoma Constitution, art. V, § 46 prohibits the Legislature from passing special laws relating to specific subject areas, and art. V, § 59 requires the Legislature to enact a general law, and not a special law, whenever possible. The pertinent part of art. V, § 46 reads: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ... [r]egulating the practice or jurisdiction of ... the courts...." Art. V, § 59 reads: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

¶ 21 Generally, a special law singles out particular persons or things upon which it operates, while a general law embraces and operates upon all or all within a class. *Burks v. Walker*, 1909 OK 317, 109 P. 544, 549; *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, 821–822. Where a statute operates upon a class, the classification must be reasonable and pertain to some peculiarity in the subject of the legislation and there must be some distinctive characteristic upon which different treatment is reasonably founded. *Id.*

¶ 22 A statute creates procedural disparity prohibited by art. V, § 46 if it targets for different treatment less than an entire class of similarly situated persons and injects asymmetry into an established procedure. *Zeier v. Zimmer, Inc.*, 2006 OK 98, ¶ 13, 152 P.3d 861, 868 (declaring the statute requiring a plaintiff to attach a medical affidavit to a petition alleging medical negligence an unconstitutional special law); *Reynolds v. Porter*, 760 P.2d at 823 (declaring the statute of limitation restricting damages for medical negligence an unconstitutional special law). Both *Zeier* and *Reynolds* struck down statutes that treated medical providers differently from other defendants in common law negligence actions.

¶ 23 Relying on our decisions in *Zeier* and *Reynolds*, Glasco attacked § 840–2.21(D) for withholding a right of action from state employees that is available to other employees. Glasco argued the statute metes out unequal remedies under the WCA for the indivisible class of "injured workers." "Injured worker" is not a defined class in the WCA, and Glasco did not come forward with any legislative act establishing "injured worker" as an indivisible class to support his contention.

¶ 24 On the other hand, "state employees" is a statutory classification. The OPA defines "employee" or "state employee" to mean an elected or appointed officer or employee of an agency unless otherwise indicated.[14] 74 O.S.2001, § 840–1.3(2). The class of persons or things targeted by the challenged language in § 840–2.21(D) is that of "state employees" who have a work-related illness or injury, and Glasco did not argue that "state employees" is an unreasonable legislative classification or that "state employees" as a class has no relationship to the express purposes of the OPA:

> [T]o establish for the state a system to recruit, select, develop and maintain an effective and responsive work force; to provide for administrative flexibility and adequate and reasonable protection and security for those who have and will enter into the service of the state; to provide for the preservation and protection of the

Merit System; and to provide policies and procedures for the selection, hiring, retention, advancement, career development, job classification, salary administration, discipline, discharge and other related activities, all in accordance with principles of merit and fitness and equal opportunity, and to maintain a high level of morale, motivation and productivity among state employees.

74 O.S.2001, § 840–1.2.

¶ 25 Further, Glasco did not argue that the class of "state employees" has no distinctive characteristic upon which different treatment may be reasonably founded. In this regard, *Gladstone v. Bartlesville Indep. School Dist. No. 30*, 2003 OK 30, 66 P.3d 442, is instructive. *Gladstone* involved a wrongful death claim which arose out of an automobile collision caused by a school bus driver. The GTCA statute at issue in *Gladstone* exempted governmental entities from tort liability where the injured person is covered by workers' compensation benefits. *Gladstone* considered arguments of basic unfairness in treating governmental tort claimants who are covered by workers' compensation differently from governmental tort claimants who were not covered by workers' compensation—i.e., claimants entitled to workers' compensation benefits could not sue the government in tort while claimants not entitled to workers' compensation benefits could sue the government in tort. *Gladstone* said a critical question was whether the classification rested upon a difference reasonably related to the goals of the GTCA. *Id.* at ¶ 14. Finding no express legislative goals for the different treatment, *Gladstone* recognized the general objective in excluding the government from tort liability "is to protect the public fisc by limiting responsibility for public wrongs." *Id.* at ¶ 15. Also recognizing that "classification is at the heart of the legislative function," *Gladstone* refused to substitute judicial judgment for legislative judgment as to where to draw the line between groups for the purpose of protecting the public fisc. *Id.* at ¶ 18. *Gladstone* upheld the exemption of state and political subdivisions from liability for injuries

---

**14.** Agency is defined as any office, department, board, commission, or institution in the executive branch of state government. 74 O.S.2001, § 840–1.3(1).

to tort claimants who stand covered by the workers' compensation regime even though they are liable for injuries to tort claimants not covered by workers' compensation.

¶ 26 Article V, § 46 does not, however, prohibit legislative classification for remedial purposes; it requires the remedy be uniform across the entire class of similarly situated persons or things throughout the state. As *State ex rel. Macy v. Bd. of County Com'rs of the County of Okla.*, 1999 OK 53, ¶¶ 14–15, 986 P.2d 1130, 1138–1139, explained, the Legislature is prohibited in art. V, § 46 from creating disparate remedies for similarly situated persons.

Art. 5, § 46 mandates in absolute terms statewide procedural uniformity for an entire class of similarly situated persons or things. The cited constitutional provision proscribes "special" laws that single out for different treatment less than an entire class of similarly situated persons or entities. Affording disparate remedies for the removal of an illegality from the budget would offend this State's fundamental law. Tax consumers and tax beneficiaries are affected in a like manner by a county budget's illegality. Giving for the very same inquiry one remedy (of a § 1415 protest) to taxpayers *only* and quite a different remedy (of mandamus) to tax consumers for the very same inquiry would create a procedural dichotomy that at once destroys the symmetry of Oklahoma's remedial regime and hence offends the § 46 uniformity-of-procedure mandate.

¶ 27 We presume that every statute is constitutional, *Reynolds v. Porter*, 760 P.2d at 819, and we approach a constitutional attack on a statute with great caution and grave responsibility. *Way v. Grand Lake Ass'n, Inc.*, 1981 OK 70, 635 P.2d 1010, 1017. Our consideration is guided by the general principles that the Legislature is sovereign and that the legislative power has no limitation except by specific declaration in the state or federal constitutions. *Id.* Constitutional restriction on the Legislature will be strictly construed, and a statute will be upheld against a constitutional attack unless it is clearly and overtly inconsistent with the constitution. *Id.*

¶ 28 In this case, the challenged leave without pay statute facially treats alike all members of the class of state employees on leave without pay. The classification satisfies the requirements of the Okla. Const., art. V, § 46 and art. V, § 59, *Reynolds v. Porter*, 760 P.2d at 821–822, and we will not second guess the desirability, wisdom or logic of a valid statutory classification, *State ex rel. Macy*, 1999 OK 53, at ¶ 12, 986 P.2d at 1137–1138, or the legislative fairness of a valid remedial statute. *Id.* at ¶ 23, 986 P.2d at 1139.

## V. ACCESS TO THE COURTS

¶ 29 Glasco also attacked § 840–2.21(D) as limiting access to the courts contrary to the Okla. Const., art. II, § 6. That section reads: "The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." Glasco argued that state employees must have the same remedies that are available to all other employees in this state to satisfy this access-to-the-courts provision. We reject this argument under the teachings of *Gunn v. Consolidated Rural Water & Sewer Dist. No. 1, Jefferson County, OK*, 1992 OK 131, 839 P.2d 1345 and *Gladstone, supra.*

¶ 30 *Gunn* determined that the retaliatory discharge remedy for a governmental employee takes a different procedural path than that of a private employee. *Gunn* teaches that the remedy created in the WCA to afford relief for a governmental employer's wrongful severance of an injured worker's employment status is a statutory tort, *id.* at ¶ 7, is collateral to the remedies before the workers' compensation court, *id.* at ¶ 9, may be litigated only in the district court, *id.*, and must proceed under the GTCA. *Id.* at ¶ 7. The GTCA establishes procedure and jurisdiction of the courts different from common law negligence actions against private defendants. For instance, § 152.1 waives governmental immunity only in the manner provided in the GTCA and § 154 restricts and limits governmental liability. *Gunn* intimat-

ed that governmental entities may be shielded from retaliatory discharge responsibility if explicitly expressed by the Legislature. *Id.* at ¶ 7.

¶ 31 Glasco did not argue that treating state employees differently is not reasonably related to the stated goals of the OPA. He did not argue that prescribing administrative and judicial remedies applicable only to state employees to challenge their termination is not reasonably related to protecting the public fisc. Although in *Gladstone* the GTCA exemption was challenged under equal protection and due process principles, *Gladstone's* analysis is applicable to the access-to-the-courts challenge here. To find that § 840–2.21(D) restricts access to the courts, we would necessarily substitute our judgment for that of the Legislature. This we will not do. State employees as a group is a constitutionally valid legislative classification and different statutory administrative and judicial remedies may be provided to the class without violating the Okla. Const., art. II, § 6.

## VI. THE SUMMARY JUDGMENT

¶ 32 Section 840–2.21(D) provides that a state employee may be discharged in accordance with the OPA and the Merit Rules if the employee has not returned to the original position within the agency within one (1) year from the date of the start of leave without pay notwithstanding the provisions of Section 1 et seq. of Title 85 of the Oklahoma Statutes. It is a permissive provision rather than a mandatory provision. The statute does not strictly require the discharge of a state employee who has been on leave without pay for a year, but it does permit the discharge so long as the state employer acts in accordance with the OPA and the Merit Rules. Whether the state employer acted in accordance with the OPA and the Merit Rules is an issue requiring proof, the absence of which could infer retaliatory discharge.

¶ 33 The retaliatory discharge statutes place the burden of proof on the employee. 85 O.S.2001, § 6. *Buckner v. General Motors Corp.,* 1988 OK 73, ¶¶ 9–11, 760 P.2d 803, 806–807, outlined the order of proof to establish or defend a retaliatory discharge claim.

*Buckner* teaches that the employee has the burden to prove a *prima facie* case while the employer has the burden to produce evidence to rebut the employee's initial showing and that the burden of persuasion is always on the employee. The employer's burden is one of production of relevant and credible evidence; it is not a burden of persuasion. If the employer carries its proof burden, the factual presumption raised by the *prima facie* case is removed and the employee must demonstrate that the reason for the discharge offered by the employer was not the true reason for termination or the employee must produce evidence that the discharge was motivated by retaliation.

¶ 34 Glasco presented a *prima facie* case under § 5(B) that 1) he was employed by DOC, 2) he had a work-related injury, and 3) he was terminated during a period of temporary total disability. These basic facts gave rise to an inference or factual presumption of a violation of § 5(B). The burden shifted to DOC to rebut the inference of discharge in violation of § 5(B). DOC rebutted the inference and presented relevant credible evidence that the discharge was proper under § 840–2.21(D): 1) Glasco had been on leave without pay for a year and 2) DOC discharged Glasco in accordance with the OPA, Merit Rules, and DOC written policies. DOC's evidence also gave rise to an inference or factual presumption of compliance with § 840–2.21(D). The burden then shifted to Glasco to present evidence of some impropriety or illegality in DOC's administrative procedure that would dispute the factual presumption that DOC complied with the OPA, Merit Rules, and DOC written policies when it discharged Glasco or to present other evidence that would give rise to an inference of retaliation.

¶ 35 Glasco did not come forward with any evidence to dispute DOC's defense. The record is silent as to whether Glasco complained of any irregularity in the notice or the conduct of the informal administrative pre-termination hearing. The record is also silent as to whether Glasco complained of any irregularity or insufficiency in the evidence upon which DOC based its decision to terminate Glasco. Further, the record is silent as

to whether DOC refused to consider hiring Glasco in a suitable position after being released to return to work pursuant to 74 O.S.Supp.2002, 840–2.21(I). In summary, the material facts that support DOC's defense in this cause are undisputed and support but a single inference that DOC followed all policies in discharging Glasco.

¶ 36 We have perused the evidentiary material submitted on summary judgment in this appellate record and tested its legal sufficiency. We have considered all the facts and inferences in a light most favorable to Glasco. We find that the facts critical to DOC's defense are established by legally sufficient evidence and that DOC is entitled to judgment as a matter of law. Accordingly, we find no error in the journal entry of the district court denying plaintiff's motion for partial summary judgment and sustaining defendant's motion for summary judgment.

**DISTRICT COURT'S JOURNAL ENTRY FILED OCTOBER 16, 2007, AFFIRMED.**

WINCHESTER, C.J., EDMONDSON, V.C.J., and HARGRAVE, KAUGER, WATT, TAYLOR, COLBERT, and REIF, JJ., concur.

OPALA, J., dissents by separate writing.

### Appendix

74 O.S.Supp.2002, § 840–2.21:

A. If a state employee, whether in the classified or unclassified service, is absent because of an illness or injury arising out of and sustained in the course of his or her employment with the state, and for which workers' compensation benefits have been filed, the employing agency shall place the employee on leave without pay if the employee so requests; provided, leave without pay pursuant to this section shall not for any other purpose be considered a break in service.

B. An employee who sustains an illness or injury arising out of and sustained in the course of employment with the State of Oklahoma shall not be required to use either accumulated sick or annual leave during such period prior to being placed on leave without pay pursuant to this section.

C. An employee placed on leave without pay pursuant to the provisions of this section shall continue receiving basic plan insurance coverage as defined in Section 1363 of this title and dependent insurance benefit allowance pursuant to paragraph 2 of subsection C of Section 1370 of this title paid by the agency during the leave without pay.

D. An employee on leave without pay pursuant to the provisions of this section shall have the right to be returned to his or her original position in accordance with rules promulgated by the Office of Personnel Management. If it is found necessary for the good of the state to fill the position during the period the employee is on leave without pay the employee filling the position shall vacate the position upon the return of the employee on leave without pay, subject to layoff, transfer or demotion rights earned under the Oklahoma Personnel Act, Section 840.1 et seq. Of Title 74 of the Oklahoma Statutes and rules of the Office of Personnel Management. The right to return to the original position shall expire one (1) year from the date of the start of leave without pay. **Notwithstanding the provisions of Section 1 et seq. of Title 85 of the Oklahoma Statutes, the employee may be separated in accordance with the Oklahoma Personnel Act and Merit Rules if the employee has not returned to the original position of the employee or some other position within the agency within one (1) year from the date of the start of leave without pay.**

E. An employee on leave without pay pursuant to the provisions of this section shall provide a medical statement as to his or her ability to perform the duties of the position to the appointing authority at least every three (3) months.

F. If the employee becomes medically able with reasonable accommodation to perform the duties of his or her original position, the employee shall be returned to such position. If the employee is unable to perform the duties of the original position with reasonable accommodation, but is

medically able with reasonable accommodation to perform the duties of any other position within the agency for which the employee is qualified, and appointment to such other position does not constitute a promotion, the employee shall have first preference for any such position which becomes vacant within the agency, notwithstanding any other preference provisions of the Oklahoma Personnel Act or other laws of the State of Oklahoma. An employee accepting another position pursuant to this subsection shall not forfeit his or her right to be returned to the original position within twelve (12) months after the start of leave without pay pursuant to the provisions of subsection D of this section.

G. An ill or injured employee shall be eligible to participate in the Disability Insurance Program established pursuant to the provisions of Section 1331 et seq. of Title 74 of the Oklahoma Statutes in accordance with rules promulgated by the State and Education Employees Group Insurance Board.

H. **All benefits, rights, and obligations contained in this section shall continue during the time the employee remains on leave without pay status, for a continuous period not to exceed twelve (12) months. However, if a workers' compensation claim based on such illness or injury is denied during the twelve-month period, all benefits, rights and obligations conferred upon an employee pursuant to this section shall cease and be discontinued immediately.**

I. A classified employee who is separated pursuant to subsection D of this section shall be eligible for reinstatement to employment with any state agency for twelve (12) months after the date of separation whether in the classified or unclassified service in accordance with the rules adopted by the Administrator of the Office of Personnel Management provided the employee is qualified for the position to which reinstated. An unclassified employee who is separated pursuant to subsection D of this section shall be eligible for reinstatement to unclassified employment with any state agency for twelve (12) months after the date of separation in accordance with the rules promulgated by the Administrator of the Office of Personnel Management provided the employee is qualified for the position to which reinstated. Nothing in this subsection shall be construed to compel or require any agency of the state to reinstate a former employee who is separated pursuant to subsection D of this section. Further, nothing in this subsection shall be construed as limiting or reducing a former employee's eligibility for reinstatement pursuant to other general reinstatement or reemployment provisions in the rules promulgated by the Administrator.

(Bold added.)

85 O.S.2001 § 5(B) reads:

A. No person, firm, partnership, corporation, or other entity may discharge, or except for non-payment of premium, terminate any group health insurance of any employee because the employee has in good faith:

1. Filed a claim;

2. Retained a lawyer for representation regarding a claim;

3. Instituted or caused to be instituted any proceeding under the provisions of this title;

4. Testified or is about to testify in any proceeding under the provisions of this title; or

5. Elected to participate or not to participate in a certified workplace medical plan as provided in Section 14 of this title.

B. **No person, firm, partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work.**

C. After an employee's period of temporary total disability has ended, no person, firm, partnership, corporation, or other entity shall be required to rehire or retain any employee who is determined to be physically unable to perform assigned duties. The failure of an employer to rehire or retain any such employee shall in

no manner be deemed a violation of this section.

(Bold added.)

[We note that in 2005, the Legislature added a subsection D to § 5. The new subsection D prohibits an employer from discharging an employee to avoid paying temporary total disability benefits.]

85 O.S.2001, § 6, reads:

Except as provided in Section 29 of this act, a person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages, actual and punitive if applicable, suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. Exemplary or punitive damage awards made pursuant to this section shall not exceed One Hundred Thousand Dollars ($100,000.00). The burden of proof shall be upon the employee.

85 O.S.2001, § 6.1 reads:

The liability of the state or any political subdivision as defined in Section 152 of Title 51 of the Oklahoma Statutes, that is found in violation of Section 6 of Title 85 of the Oklahoma Statutes shall be limited to the limits of liability contained in the Governmental Tort Claims Act.

85 O.S.2001, § 7 reads:

Except as otherwise provided for by law, the district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act.

OPALA, J., dissenting.

¶1 The critical subject for our inquiry today is whether the terms of 74 O.S.Supp. 2002 § 840–2.21(D),[1] which remove state employees from the Workers' Compensation Act's (WCA) protection from discharge pending temporary total disability (TTD),[2] conform to the state fundamental law's interdiction of disuniform laws on prohibited subjects.[3] I would answer this question in the negative.

## I

## THE LEGISLATURE HAS IMPERMISSIBLY DICHOTOMIZED INTO SUBCLASSES A SINGLE CLASS OF WORKERS COVERED BY THE WCA AND HAS VARIED THE LEGAL EFFECT OF TTD AWARDS DUE ONE OF THE PROTECTED SUBCLASSES IN VIOLATION OF STATE FUNDAMENTAL LAW

### A.

### *Art. 5 § 46, Okl. Const. Analysis*

¶2 Nonuniform laws that vary the enforcement of or effect upon judgments are plainly, absolutely and unequivocally interdicted by

1. The terms of 74 O.S.Supp.2002 § 840–2.21(D) of the Oklahoma Personnel Act provide in pertinent part:

    D. An employee on leave without pay pursuant to the provisions of this section shall have the right to be returned to his or her original position in accordance with rules promulgated by the Office of Personnel Management. If it is found necessary for the good of the state to fill the position during the period the employee is on leave without pay the employee filling the position shall vacate the position upon the return of the employee on leave without pay, subject to layoff, transfer or demotion rights earned under the Oklahoma Personnel Act and rules of the Office of Personnel Management. The right to return to the original position shall expire one (1) year from the date of the start of leave without pay. **Notwithstanding the provisions of Section 1 et seq. of Title 85 of the Oklahoma Statutes, the employee may be separated in accordance with the Oklahoma Personnel Act and Merit Rules if the employee has not returned to the original position of the employee or some other position within the agency within one (1) year from the date of the start of leave without pay.**
    (emphasis added).

2. The terms of 85 O.S.Supp.2005 § 5(B) provide:

    B. No person, firm, partnership, corporation, or other entity may discharge any employee during a period of temporary total disability solely on the basis of absence from work.

3. The terms of Art. 5 § 46, Okl. Const., provide in pertinent part:

    The Legislature shall not ... pass any ... special law ...
    * * *
    ... **providing or changing the methods for ... the enforcement of judgments**
    (emphasis added).

the command of Art. 5 § 46, Okl. Const.[4] An order of the Workers' Compensation Court is a judgment within the meaning of § 46 because by specific legislative prescription the order is enforceable as a judgment.[5] Legislation that creates differences in the enforcement or effect of a compensation award violates the § 46 uniformity mandate.

## B.

### *The Terms Of 74 O.S.Supp.2002 § 840–2.21(D) Violate The Constitutional Proscription Against Special Laws That Vary The Enforcement Or Legal Effect Of Judgments*

¶3 The terms of 85 O.S.Supp.2005 § 5(B) protect all employees from discharge while receiving TTD benefits.[6] In *Upton v. State ex rel. Oklahoma Dept. Of Corrections*[7] the court **harmonized** the provisions of § 5(B) with the conflicting provisions of § 840–2.21(D)[8] of the Oklahoma Personnel Act. The latter allowed the discharge of state employees whose period of TTD extends beyond one year. By *Upton* state employees were afforded the same protection from discharge that is accorded other employees receiving TTD benefits under the WCA.[9]

¶4 The statute with whose infirmity we must deal here is the post-*Upton* amendment of § 840–2.21(D)[10] which **explicitly** makes the **impact of a TTD award different in its legal effect upon state employees from that which it has upon TTD orders made in favor of other workers' compensation claimants.** The amendment impermissibly dichotomizes a single class of workers' compensation claimants by dividing them into subclasses—one that is comprised of state employees who stand without the WCA's protection from discharge pending collection of TTD and the other subclass which is comprised of all other claimants receiving TTD benefits. The Legislature clearly has the power to exclude classes of employees from coverage by the WCA.[11] But as to all those employees who stand covered by the WCA, **the Legislature is without power to vary the effect of a TTD award by excluding one group of claimants from the benefits that stand accorded other TTD recipients.**

¶5 In the case now before us a state correctional employee had been placed on leave without pay while receiving TTD benefits under an order of the Workers' Compensation Court. When his absence from work had exceeded one year his employment came to be terminated under the authority granted by 74 O.S.Supp.2002 § 840–2.21(D), the provision that is patently fraught with a constitutional infirmity. The benefit of law that came to be withheld from the state employee injured on the job was that which would have preserved his employment status during the entire TTD period. **In short, the statute which gives state employees reduced protection of their employment status while on TTD clearly offends the § 46 prohibition against special laws that deal with the enforcement of WCA judgments.**

4. A subject that is listed in Art. 5 § 46, Okl. Const., may not be disuniformly dealt with by any enactment. *Reynolds v. Porter*, 1988 OK 88, 760 P.2d 816, 822.

5. 85 O.S.2001 § 42; *Kuykendall v. Gulfstream Aerospace Technologies*, 2002 OK 96, 66 P.3d 374; *Lee Way Motor Freight, Inc. v. Welch*, 1988 OK 121, ¶ 9, 764 P.2d 191, 195.

6. For the terms of 85 O.S.Supp.2005 § 5(B) see *supra* note 2; *Upton v. State ex rel. Oklahoma Dept. of Corrections*, 2000 OK 46, ¶ 8, 9 P.3d 84, 87.

7. *Upton v. State ex rel. Oklahoma Dept of Corrections, supra* note 6, 9 P.3d at 88, at ¶ 12.

8. The then-applicable version of the Oklahoma Personnel Act (74 O.S.Supp.1999 § 840–2.21(D))

provided that if a state employee has not returned to his/her original (or some other) agency position within a year from the commencement of leave without pay, the employee may be separated from employment in accordance with the Oklahoma Personnel Act and rules of the Office of Personnel Management. Its terms made no reference to the contrary provisions of the WCA, 85 O.S.2001 § 5(B).

9. *Upton v. State ex rel. Oklahoma Dept of Corrections, supra* note 6, at ¶ 12.

10. For the pertinent text of the 2002 amendment see the highlighted portion of 74 O.S.Supp.2002 § 840–2.21(D), *supra* note 1.

11. *See e.g.* the provisions of 85 O.S.2001 §§ 2.1–2.6, which exclude certain classes of persons from the purview of the WCA.

## SUMMARY

¶ 6 In sum, the terms of § 804–2.21(D), as amended in 2002, **violate** the § 46 mandated norms of uniformity. They **target** for disparate treatment less than a whole class which stands embraced within one of that section's prohibited subjects. This is so because the provisions vary the impact of a TTD award by giving persons other than state employees much greater job protection while drawing TTD benefits than that which is accorded in like circumstances to claimants who are state employees.

¶ 7 I hence dissent from the court's pronouncement.