Dear Representative Shumate and Senator Wilson:
This office has received your requests for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Under the laws governing the Oklahoma State Use Committee, does the fair market price of each product or service on the procurement schedule have to be determined before the product or service is procured?
 2. May the Director of the Department of Central Services adopt, without the approval of the State Use Committee, rules and/or policies which govern the process for determining the fair market price of products and services on the procurement schedule?
 3. Must any of the products or services on the State Use Committee's procurement schedule be subject to an open market bid process prior to the determination of a fair market price? *Page 2 
 I. THE STATE USE COMMITTEE
The general purpose of the State Use program is to provide employment opportunities for disabled individuals by creating a process for awarding certain types of state contracts to qualified nonprofit agencies that employ a high percentage of individuals with disabilities (known as State Use vendors). See
74 O.S. 2001 Supp. 2008, §§ 3001 — 3010. The program dates back to 1968 and was then known as the "Committee on Purchases of Blind-made Products and Services Act of 1968."[1]
The State Use Committee ("Committee") exists within the Department of Central Services ("DCS"). 74 O.S.Supp. 2008, § 3001[74-3001](A). The Committee has five voting members — three private citizens, the Director of DCS or designee, and the Director of the Division of Visual Services within the Department of Rehabilitation Services or designee. See id. The Committee also includes one additional nonvoting member who is employed by DCS as a contracting officer, and who is appointed by the State Purchasing Director with the advice of the Committee. Id. § 3001(A)(6). This contracting officer is "designated specifically to solicit, develop, and negotiate contracts with agencies and individuals" for the State Use program. Id.
The Committee has several powers granted to it by statute, three of which are particularly relevant to your questions. The first such power is the authority to designate a schedule of products and services that are directly produced and provided by qualified nonprofit agencies.
 The Committee shall designate by regulation a schedule, hereinafter referred to as the procurement schedule, of the products directly manufactured, produced, processed or assembled or services directly performed, offered or provided by any *Page 3 severely disabled person or qualified nonprofit agency for the severely disabled, as defined by this act, which the Committee determines are suitable for procurement by the state. No state agency shall purchase, pursuant to Section 3007 of this title, products or services purporting to be made by severely disabled persons in workshops which are not certified by the Committee or by severely disabled individuals who are not certified by the Committee.
74 O.S. 2001, § 3004[74-3004] (emphasis added).[2]
The second power granted to the Committee that is particularly relevant to your questions is the authority to establish a fair market price for all the products and services on the procurement schedule.
 The Committee shall determine the fair market price of all products and services included in the procurement schedule and shall revise such prices in accordance with changing market conditions; provided, however, a change in price shall not be effective prior to the expiration of fifteen (15) days from the date on which such change is made by the Committee.
Id. § 3005 (emphasis added).
The third power possessed by the Committee relevant to your questions is the authority to prescribe rules to carry out the purposes of the State Use statutes. "The State Use Committee shall prescribe rules to carry out the purposes of the provisions of Sections 3001 through 3009 of this title."Id. § 3009(A). In accordance with this power the Committee has prescribed rules which include provisions for the compilation and approval of the procurement schedule, and for determining the fair market price for the products and services on the schedule.See OAC 304:10-1-4, 304:10-1-5 (2009). With regard to the procurement schedule, the rules first require the contracting officer to compile a current *Page 4 
list of all products and services offered by State Use vendors. OAC304:10-1-5(a). The Committee then approves the list or deletes items from it. OAC 304:10-1-5(b).
With regard to establishing a fair market price, the rules require extensive research by the contracting officer. The contracting officer must first conduct a market analysis using criteria which may include a survey of comparable private contracts, research of other governmental entities within and outside the state, and a comparison of wholesale and retail pricing of like products and services. OAC 304:10-1-4(1). Based on this market analysis and "in accordance with . . . the Committee's approved Fair Market Price Policy" the contracting officer then makes a recommendation to the Committee, and a fair market price is established for each product and service by a vote. OAC 304:10-1-4, 304:10-1-4(2) — (4). The State Use Fair Market Price Policy[3] is expressly referenced in the rules and is an internal policy which more specifically describes the methodology to be used by the contracting officer in conducting the market analysis required by the rule. See OAC304:10-1-4. For example, the Fair Market Price Policy details the steps the contracting officer must follow to conduct a price comparison analysis and a cost analysis of the product or service to be procured. See id. It also requires the contracting officer to obtain at least five, but no more than six, prices for comparison purposes. Id. at p. 2, ¶ 4.2.1. The highest and lowest prices are discarded and the remaining prices are used to determine a fair market price. Id. at p. 2, ¶ 4.2.2.
The rule governing the determination of a fair market price also distinguishes between two categories of products and services on the procurement schedule. First, there are those products and services for which the price does not vary by state agency, location, or specifications. OAC 304:10-1-4(5). The fair market price for these items, once approved, "shall remain in effect until the Committee establishes a new fair market price." Id. Second, there are those products and services "for which the pricedoes vary depending on the state agency, location, or specifications." OAC 304:10-1-4(6). With regard to these items, "the Committee shall approve, each contract for the product or service."Id. This same rule, OAC 304:10-1-4(7) sets forth a process of ratification by which the Committee approves each contract after a determination of fair market price and a contract award is made by the contracting officer with the approval of the Director of DCS, as follows:
 If the product or service is one for which fair market [price] has not been established, either because the fair market [price] for the type of product or service has been determined to vary depending on the state agency, location or specifications; the Contracting Officer, with the approval of the State Purchasing Director, is authorized to award a contract in accordance with the State Use Fair Market Price Policy to a qualified individual or organizations[4] [sic], thereby establishing fair *Page 5 market price, which establishment shall be subject to ratification by the Committee at the next regular Committee meeting.
Id. (emphasis added) (footnote added).
Finally, OAC 304:10-1-4 allows for a similar Committee ratification process in an emergency as follows:
 (8) In the event of an emergency, with approval of the State Purchasing Director, the contracting officer may award a contract to an individual or agency for a maximum period of three (3) months without prior Committee approval, but subject to Committee approval at the next regular Committee meeting. If the Committee approves the contract, the contract shall terminate at the end of the contract period.
Id. (emphasis added). Thus, with respect to products and services for which the price varies or in the event of an emergency, the fair market price is determined by the contracting officer's market analysis as required by the rule, in accordance with the Fair Market Price Policy and with approval of the State Purchasing Director. Based on this fair market price determination, a contract is then awarded to a State Use vendor and the determination is subject to ratification by the Committee.
The State Use program's purpose of creating employment opportunities for disabled individuals is accomplished by statutory and rule provisions requiring state agencies to buy the products and services on the procurement schedule from vendors which employ disabled individuals.
 A. Whenever the State of Oklahoma or any of its agencies intends to procure any product or service included in the procurement schedule, that entity shall secure the product or service from a qualified nonprofit agency providing employment to people with severe disabilities at the fair market price determined by the Committee if the product or service is available within the period required by the entity.
74 O.S. 2001, § 3007[74-3007]. Procurements made pursuant to the laws governing the State Use program are also exempt from the competitive bid requirements of the Central Purchasing Act. *Page 6 
 Nothing in Sections 3001 et seq. of this title pursuant to purchases of products and services from people with severe disabilities shall be construed to prohibit any department or agency of the state from manufacturing or supplying its own products or services for its own use. Procurements made pursuant to this act shall not be subject to the competitive bid requirements of the Oklahoma Central Purchasing Act, Section 85.1 et seq. of this title.
Id. § 3008 (emphasis added). The administrative rules of the Department of Central Services' Central Purchasing Division also require state agencies to purchase products and services on the procurement schedule.
 State Use Committee. State agencies shall make acquisitions from suppliers on the State Use Committee procurement schedule regardless of the acquisition purchase price if the supplier's delivery date meets state agency requirements. State Use Committee contracts are mandatory contracts. State agencies shall utilize the State Use Committee procurement schedule to ensure all acquisitions are made pursuant to 74 O.S., Section 3001[74-3001], et seq. If an acquisition is available from both the State Use Committee procurement schedule and the Oklahoma Correctional Industries, the state agency shall make the acquisition from the State Use Committee procurement schedule.
OAC 580:15-6-5(2) (2007). *Page 7 
 II. ANALYSIS
A. The Determination of Fair Market Price
Your first question focuses on the point in time at which a fair market price is determined for a product or service on the procurement schedule. Specifically, you ask whether this determination must occur before the time at which procurement is made under the State Use program. The term "procurement" is not defined in the State Use statutes or the rules prescribed by the Committee. However, the State Use Committee exists within the DCS's Central Purchasing Division, and the term is defined in the rules governing the Central Purchasing Division.
 "Procurement" means buying, purchasing, renting, leasing, or otherwise acquiring any goods, services, construction, or information services. The term also means all functions that pertain to the obtaining of any goods, services, construction, or information services, including, but not limited to, the description of requirements, selection, and solicitation of sources, preparation and award of contracts, and all phases of contract administration.
OAC 580:15-2-2 (2007).
The requirement that the fair market price be determined prior to the time of procurement or contract award, is clearly set forth in the statutes. Title 74, Section 3005 states that the Committee "shall determine the fair market price of all products and services included in the procurement schedule." Subsection 3007(A) then provides that the fair market price must be determined before a state agency is required to procure products or services on the procurement schedule:
 Whenever the State of Oklahoma or any of its agencies intends to procure any product or service included in the procurement schedule, that entity shall secure the product or service from a qualified nonprofit agency providing employment to people with severe disabilities at the fair market price determined by the Committee if the product or service is available within the period required by the entity.
Id. (emphasis added). *Page 8 
"When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." City of Durant v. Cicio,50 P.3d 218, 221 (Okla. 2002). Subsection 3007(A) is not ambiguous. By use of the past tense version of the verb "determine," the statute's meaning is clear — the fair market *Page 9 
price must have been established prior to the time at which a contract is awarded under the State Use program.
The process by which a fair market price is determined prior to the time of a contract award is set forth in the rules prescribed by the Committee. Rules enacted by administrative agencies and boards, pursuant to the powers delegated to them, have the force and effect of law. See 75 O.S. 2001, § 308.2[75-308.2](C); Johnson v. HillcrestHealth Ctr., Inc., 70 P.3d 811, 817-18 (Okla. 2003). For the category of products and services on the procurement schedule for which price does not vary, the fair market price is determined by vote of the Committee upon the recommendation of the contracting officer after the market analysis required in the rules. OAC 304:10-1-4(3). This determination of fair market price is not connected to individual contract awards. Once the fair market price is approved for the products and services which do not vary in price, it remains in effect until changed by the Committee. OAC304:10-1-4(5).
For the category of products and services on the procurement schedule for which the price does vary, the Committee has by its rules delegated to the contracting officer and the Director of Central Services the authority to award a contract to a State Use vendor after conducting the market analysis and price comparison methods for determining a fair market price as set forth in the rules and the Fair Market Price Policy. OAC 304:10-1-4(6). This determination is then subject to ratification by the Committee and each contract award and fair market price determination must be ratified individually. OAC 304:10-1-4(7).[5]
The Committee can also limit the use of the ratification process by increasing the number of regular meetings it holds each year beyond the six minimum required by law[6] or by scheduling special meetings as needed. This would allow the Committee more opportunities to vote on the fair market prices of products and services for which the price varies before the contracts are awarded. *Page 10 
Finally, in the event of an emergency, the rules always delegate to the contracting officer, with the approval of the Director of DCS, the authority to determine the fair market price prior to the time of a contract award and after conducting the required market analysis. OAC 304:10-1-4(8). This determination and contract award is subject to approval by the Committee at its next regular meeting.Id.
Therefore, in the case of those products and services for which the price does not vary, the fair market price is determined by vote of the Committee prior to a contract award. For those items for which the price does vary, or for emergency purchases, the fair market price is determined by the contracting officer with the approval of the Director of DCS in accordance with the method prescribed in the rules prior to a contract award and subject to ratification by the Committee. In addition, the Committee can schedule additional meetings to limit the use of the ratification process and allow for prior Committee approval of all fair market prices.
B. State Use Committee Rules.
Your second question focuses on the authority to prescribe rules which carry out the purposes of the State Use program statutes. This authority rests clearly with the State Use Committee as stated by 74 O.S. 2001, § 3009[74-3009](A) ("The State Use Committee shall prescribe rules to carry out the purposes of the provisions of Sections 3001 through 3009 of this title."). The Director of DCS, as a voting member of the Committee, may participate but does not have authority independent of that conveyed by membership on the Committee to adopt rules governing the State Use program. The State Use Committee exists within the DCS and the Director of DCS has authority to promulgate rules governing the DCS and on a broad range of subjects pertaining to the Oklahoma Central Purchasing Act, including acquisitions by state agencies, and "[a]ny other matter or practice which relates to the responsibilities of the Director of the Department of Central Services." 74 O.S.Supp. 2008, § 85.5[74-85.5](C)(16). However, it is a well-established rule in Oklahoma law that, "If there is a conflict between two statutes on the same subject and the language in one statute is general while the language in the other is specific, the specific statute will control over the general statute."Glasco v. Okla. Dep't of Corr., 188 P.3d 177, 184 (Okla. 2008).
In this case, application of the specific-over-general rule would result in the conclusion that the State Use Committee's specific authority to prescribe rules to carry out the purposes of the State Use statutes controls over the more general authority of the Director of DCS to promulgate rules governing DCS and acquisitions by state agencies under the Central Purchasing Act. Therefore, the Director of DCS does not have the authority to adopt rules and/or policies governing the State Use program without the approval of the State Use Committee.
C. An Open Market Bid Process for State Use Products andServices
Your final question focuses on the possible interaction of the procurement process established by the State Use statutes and the requirements of a competitive bidding process which is common to most state purchases. With regard to competitive bidding, however, the State Use statutes provide the following express exemption: "Procurements made pursuant to this act shall not be subject to the competitive bid requirements of the Oklahoma Central Purchasing Act, Section 85.1 et seq. of this title." 74 O.S. 2001, § 3008[74-3008]. Furthermore, no other provisions of the State Use statutes or rules prescribed by the Committee require a competitive bidding process. In addition, this office previously concluded that the State Use Committee does not have authority to issue requests for proposals and that contracts with State Use vendors for items on the procurement schedule are not awarded through a Request for Proposal process. See A.G. Opin. 06-23, at 156.[7] Therefore, the procurement process of the State Use program is not subject to a competitive bid process prior to procurement or the determination of a fair market price.
 It is, therefore, the official Opinion of the Attorney General that:
 1. Pursuant to 74 O.S. 2001, § 3007[74-3007](A), the fair market price of products and services on the procurement schedule established by the State Use Committee must be determined before procurements can be made.
 A. With regard to those products and services on the procurement schedule for which the price does not vary by agency, location or specifications, the fair market price is determined before procurement by vote of the State Use Committee upon the recommendation of the contracting officer pursuant to OAC 304:10-1-4(3) — (5).
 B. With regard to those products and services on the procurement schedule for which the price does vary, the Committee has, *Page 11 pursuant to OAC 304:10-1-4(7), delegated to the contracting officer and the Director of Central Services the authority to award a contract to a State Use vendor after determining a fair market price in accordance with the market analysis, price comparison, cost analysis and evaluation methods set forth in the rules and the Fair Market Price Policy.[8] This determination is subject to ratification by the State Use Committee at its next regular meeting.
 C. With regard to emergency purchases the Committee has, pursuant to OAC 304:10-1-4(8), delegated to the contracting officer and the Director of Central Services the authority to award a contract to a State Use vendor after determining a fair market price in accordance with the market analysis and price comparison methods set forth in the rules and the Fair Market Price Policy. This determination is subject to ratification by the State Use Committee at its next regular meeting.
 D. The Committee can limit the use of the ratification process by increasing the number of regular meetings it holds each year beyond the six minimum required by law or by scheduling special meetings as needed. 74 O.S. 2001, § 3009[74-3009](B)(2).
 2. Pursuant to 74 O.S. 2001, § 3009[74-3009](A), the State Use Committee has sole authority to prescribe rules which carry out the purposes of the State Use statutes and the Director of the Department of Central Services may not adopt rules or policies to carry out those purposes without approval of the State Use Committee.
 3. Pursuant to 74 O.S. 2001, § 3008[74-3008], procurements made pursuant to the State Use statutes are not subject to the competitive bid requirements of the Central Purchasing Act, and an open market bid process is not otherwise required prior to a determination of a fair market price by the State Use Committee.
W.A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
RICHARD D. OLDERBAK
ASSISTANT ATTORNEY GENERAL
[1] See
1968 Okla. Sess. Laws ch. 149, §§ 1-12 (codified at 7 O.S.Supp. 1968, §§ 101-112[7-101-112]); 1973 Okla. Sess. Laws ch. 20, §§ 1, 10, 11 (renaming to "Committee on Purchases of Products and Services of the Severely Handicapped," repealing 7 O.S. 1971, §§ 101-112 and codified at 74 O.S.Supp. 1973, §§ 3001-3009[74-3001-3009]); 1996 Okla. Sess. Laws ch. 322, § 1(A) (renaming to "State Use Committee").
[2]
 "Qualified nonprofit agency for the severely handicapped' means a nonprofit agency which is certified as a sheltered workshop by the wage and hour division of the U.S. Department of Labor and employing severely disabled persons who constitute at least seventy-five percent (75%) of the personnel engaged in direct production of products or services offered by the agency for procurement by this state[.]
74 O.S.Supp. 2008, § 3003[74-3003](3).
[3] See Oklahoma Department of Central Services, State Use Fair Market Price Policy (rev. May 2009) (unpublished policy, on file with the State Use Committee) [hereinafter Fair Market Price Policy].
[4] "`Qualified organization' means a blind person, qualified nonprofit agency for the severely handicapped, or severely disabled person contracting to supply goods or services." 74 O.S.Supp. 2008, § 3003[74-3003](5). For a definition of "qualified nonprofit agency for the severely handicapped," see footnote 1.
[5] If the Committee fails to ratify the fair market price determination and contract award made by the contracting officer with the approval of the Director of DCS, the contract would then be in violation of the statutory requirements for award to a State Use vendor and would be void. In light of this possibility, the contract should contain language clearly stating that it will terminate if not approved by the Committee.
[6] See 74 O.S. 2001, § 3009[74-3009](B)(2).
[7] However, if a product or service on the procurement schedule is not "available within the [time] period required" by the state agency, it is not required to be procured from a State Use vendor and, therefore, would be subject to procurement under the provisions of the Central Purchasing Act. 74 O.S. 2001, § 3007[74-3007](A).
[8] See foonote 3. *Page 1