2000 OK 72

**Teresa REYES, Appellee**

v.

**Antonio REYES, Appellant**

**No. 92,114.**

Supreme Court of Oklahoma.

Oct. 3, 2000.

Bob Robinson, Oklahoma City, Oklahoma, for Appellee.

Jeff A. Lee, George Freedman, Lee & Freedman, Oklahoma City, Oklahoma, for Appellant.

HODGES, J.

¶ 1 This appeal reviews termination of a father's parental rights for non-payment of child support. Father asserts that the trial court erred by (1) failing to determine that his payment of health insurance premiums and a $100.00 birthday gift to one of the children satisfied his court ordered child sup-

port obligation such that his parental rights could not be terminated and (2) refusing to apply an amendment to the applicable statute enacted during the time this case was pending before the trial court. This Court rejects the father's assertions of error and affirms the judgment of the trial court.

¶ 2 Teresa Reyes (Mother) and Antonio Reyes (Father) were divorced in 1995. Mother was awarded custody of the couple's three minor children. Father was denied visitation until such time as he received psychological counseling and attended the Department of Human Services' child development and child rearing classes. A six-month review hearing was set for November 16, 1995.[1] Father was also ordered to pay child support in the sum of $246.96 per month, his proportionate share of medical expenses not covered by insurance, and his proportionate share of work-related day care expenses. There was no provision in the decree requiring either parent to purchase medical insurance for the children.

¶ 3 Father made a total of five child support payments through an income assignment to his place of employment. His last child support payment was made on February 15, 1996.

¶ 4 On March 31, 1997, Mother filed her Motion to Terminate Parental Rights based upon Father's willful failure to support his minor children as required by the divorce decree. At a trial to the bench,[2] Father appeared pro se and asserted that he had provided support for his children by providing health coverage and sending cash birthday gifts. The trial court rejected his asser-

---

1. The scheduled hearing was not held in November, 1995, because Father had not completed the court-ordered classes and had not received the court-ordered counseling. Father eventually attended the parenting assistance classes in late 1997. At that time, the Department of Human Services recommended that he receive individual counseling. Father never fulfilled that requirement.

   At trial, Father asserted that his participation in the Heartland Project satisfied the counseling requirement. The trial court found, however, that the Heartland Project involved group counseling to assist those affected by the Oklahoma City bombing and did not substitute for the counseling ordered by the trial court.

2. Father asserted his right to a jury at the beginning of the trial. The trial judge noted that the case had initially been set on the jury docket. However, because (1) Father failed to appear at the pretrial conference, (2) he failed to pay the required jury fee, and (3) counsel for Mother had moved to set the matter for non-jury trial, the trial judge considered Father's right to jury trial waived. Father does not challenge that determination on appeal and it will not be addressed. Issues not raised on appeal are deemed waived. *See Carlile v. Carlile,* 830 P.2d 1369, 1372 (Okla. 1992).

tions finding a willful failure to provide the support as ordered in the divorce degree during the twelve months immediately preceding Mother's motion. The trial court further found that there was no chance of reconciling the relationship between the children and Father, thus, it was in their best interest that Father's parental rights be terminated.[3]

### Support Obligation

■ ¶ 5 Father cites *In re Adoption of C.M.G.*, 656 P.2d 262 (Okla.1982), for the proposition that his child support obligation could be discharged through cash birthday gifts directly to the children and by providing medical insurance. *C.M.G.*, however, held that an *unadjudicated* support obligation, based on the law's general duty of support, could be satisfied by means other than cash payment such as by providing gifts, food, and clothing. *Id.* at 264. This Court distinguished this general duty from those cases in which the non-custodial parent was under a specific order for support noting that "[a] court order that calls solely for payment of money may not be satisfied by means other that payment." *Id.*

¶ 6 Here, Father was under a court-imposed obligation to pay $246.96 per month for support of his minor children. This obligation could not be discharged through any method except the payment of that amount. Father was not free to unilaterally decide that he could satisfy his court-ordered obligation through the purchase of health insurance which was not required in the divorce decree. Further, Mother was never notified that such coverage existed, no claims were filed, and no benefit to the children resulted from the purchase.

¶ 7 The same analysis applies to the $100 gift to one of the children on her birthday during the twelve-month period preceding Mother's motion. This gift, made directly to one of the children did not discharge Father's court-imposed support obligation.

### Amendment to the Applicable Statute

■ ¶ 8 While this matter was pending before the trial court, the Legislature amended the applicable statute. Father argues that he is entitled to the benefit of that amendment.

¶ 9 Mother's motion to terminate Father's parental rights was brought on March 31, 1997, under the 1995 version of title 10, section 7006—1.1 (A)(5) of the Oklahoma Statutes. That provision allowed a court to terminate parental rights to a child upon:

A finding that a parent who does not have custody of the child has willfully failed to contribute to the support of the child *as provided* in a decree of divorce or in some other court order during the preceding year or, in the absence of such order, consistent with the parent's means and earning capacity provided that the incarceration of a parent shall not prevent termination of parental rights under this section.

Okla. Stat. tit. 10, § 7006—1.1 (A)(5) (Supp. 1995) (emphasis added). By the time of trial, August 3, 1998, the section had been amended such that its provisions "shall not apply to adoption proceedings and actions to terminate parental rights which *do not* involve a petition for deprived status of the child." Okla. Stat. tit. 10, § 7006—1.1 (c) (Supp.1998) ( emphasis added). Thus, the amendment effectively eliminated the action which Mother was bringing in which there was no adoption proceeding and no petition for deprived status of her children. Father urges that the 1998 amendment must be applied retroactively to bar Mother's attempt to terminate his parental rights.

¶ 10 In *Bellah v. Bellah,* 1999 OK CIV APP 66, 986 P.2d 528, the Court of Civil Appeals addressed precisely this issue. There, the trial court was reversed for applying section 7006—1.1 retroactively to proscribe a mother's claim to terminate the parental rights of her former husband. *Bellah* held that "the 'right' recognized by § 7006—1.1 prior to amendment is clearly substantive.... As a substantive right, the denial

---

**3.** This determination was in accord with the recommendation of the children's court-appointed

lawyer.

or repeal thereof cannot be retroactively effected." *Id.* at 529. See also Okla. Const. art. V, § 54 ("The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute").

¶ 11 Father asserts that retroactive effect must be given to the amendment under the "pipeline doctrine." Father's invocation of the pipeline doctrine is unavailing. That doctrine is a common-law rule applicable to the issue of the retroactive effect of a judicial decision to pending cases. It has no application to Mother's statute-based claim.

¶ 12 This Court finds no error in the trial court's determination that Father willfully failed to meet his court-ordered obligation. Further, the record supports the trial court's determination that termination of Father's parental rights was in the best interest of the minor children.

### AFFIRMED

¶ 13 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, LAVENDER, KAUGER, WATT, BOUDREAU, and WINCHESTER, JJ., concur.