2010 OK 48

Johnny and Patty **LAFALIER** and Missy Beets, individually and on behalf of residents and property owners and former residents and property owners of Picher, Oklahoma, Plaintiffs/Appellants,

v.

The **LEAD–IMPACTED COMMUNITIES RELOCATION ASSISTANCE TRUST,** Defendant/Appellee.

No. 107,833.

Supreme Court of Oklahoma.

June 22, 2010.

184

John Wiggins, Emily N. Kitch, Wiggins Sewell & Ogletree, and Jeff D. Marr, Marr Law Firm, Oklahoma City, OK, for the appellants.

Scott D. Boughton, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, OK, for the appellee.

TAYLOR, V.C.J.

¶ 1 The questions presented in this appeal are (1) whether section 2205 of the Lead–Impacted Communities Relocation Assistance Act [1] is unconstitutional, (2) whether section 2203(M) of the Lead–Impacted Communities Relocation Assistance Act is unconstitutional, and (3) whether section 307(D) of the Oklahoma Open Meeting Act (Open Meeting Act) [2] authorizes a public body subject to its provisions to allow anyone who does not stand to profit from a purchase or appraisal of real property into an execution session wherein the purchase or appraisal is discussed. We find that the plaintiffs have failed to show that sections 2205 and 2203(M) of the Lead–Impacted Communities Relocation Assistance Act are unconstitutional. We also find that section 307(D) of the Open Meeting Act restricts attendance in executive sessions to the members of the public body, the public body's attorney, and the public

---

1. 27A O.S.Supp.2008, §§ 2201–2207.

2. 25 O.S.2001, §§ 301–314.

body's immediate staff when the body is discussing the purchase or appraisal of real property.[3]

## I. LEAD–IMPACTED COMMUNITIES RELOCATION ASSISTANCE ACT AND TRUST AGREEMENT

¶ 2 The geographical area around and including Picher is known as the Tar Creek Superfund Site (Tar Creek).[4] On September 8, 1983, Tar Creek was placed on the National Priorities List as an area that posed a significant public health or environmental risk, or both.[5] The area had substantial lead and zinc contamination.[6] In response to the elevated health risk, particularly to children six years of age and under who resided in the contaminated area, the Oklahoma Legislature passed the Lead–Impacted Communities Relocation Assistance Act (Act), and, with the Governor's approval, it became law.[7]

¶ 3 The 2004 legislation created a relocation assistance plan for renters and property owners with children six years of age and under.[8] Because a subsidence risk[9] was

3. After this appeal was retained by this Court, the plaintiffs filed a "Suggestion on the Record" with documents attached which are not part of the record on appeal. In the "Suggestion on the Record," the plaintiffs ask this Court to expedite the decision in the present case. The defendant trust filed a motion to strike the "Suggestion on the Record." This Court treats the plaintiffs motion as a motion to expedite and refuses to consider the attachments. *House of Realty, Inc. v. City of Midwest City*, 2004 OK 97, ¶ 6, 109 P.3d 314, 317 ("Generally, this Court's appellate review is limited to those facts appearing of record certified by the clerk of the tribunal below.").

4. In 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 (PL.96–510), known as CERCLA. CERCLA placed a tax on chemical and petroleum industries. The funds generated by the tax are placed in a trust fund for cleaning up abandoned or uncontrolled hazardous waste sites. Pursuant to CERCLA, the Environmental Protection Agency established a hazardous ranking system with the "sites that appear to present a significant risk to public health or the environment" being placed on the National Priorities List. 143 Cong. Rec. E1419–03 (1977) (from the Federal Register, *available at* http://www.epa.gov/superfund/sites/npl/f830908.htm# 2); *see* 40 C.F.R. §§ 35.6015, 300.425 (2008).

5. United States Environmental Protection Agency, *Final National Priorities List (NPL) Sites—by Final Listing Date*, http://epa.gov/superfund/sites/query/queryhtm/nplfin2.htm (last visited May 6, 2010).

6. For a history of mining operations at the Tar Creek site see *Cole v. ASARCO Inc.*, No. 03–CV–327–GKF–PJC, 2010 WL 711195 (N.D.Okla. Feb.24, 2010). *Cole* involves a class action on behalf of 600 residential, commercial, and government property owners in the Tar Creek area who are suing the mining companies in federal court for compensatory and punitive damages for diminution in their property values. The federal district court dismissed the claims for damages which were outside the two year statute of limitations but refused to dismiss those within the two-year period before the complaint was filed. The plaintiffs in the *Cole* case originally sought the creation of an independent relocation program in addition to damages but did not pursue this remedy in an amended complaint. *Cole v. ASARCO Inc.*, 256 F.R.D. 690, 693 (N.D.Okla.2009). ASARCO, one of the mining companies, proceeded in bankruptcy court where 523 individual property owners settled their property damages claims against ASARCO. There have been other law suits filed in federal court for damages. *See Berrey v. ASARCO Inc.*, 439 F.3d 636 (10th Cir. 2006) (The Quapaw Tribe owns or owned about eighty acres in fee and an undivided fifty-one percent of another forty acres in the Tar Creek Superfund Site. *Id.* at p. 640.); *Evans v. ASARCO Inc.*, No. 04–CV–094–GKF–PJC, 2010 WL 711193 (N.D.Okla. Feb.24, 2010); *Palmer v. ASARCO Inc.*, Nos. 03–CV–0498–CVE–PJC, 03–CV–0565–CVE–PJC, 03–CV–0566–CVE–PJC, 03–CV–0567–CVE–PJC, 03–CV–0569–CVE–PJC, 2007 WL 2381242 (N.D.Okla. Aug.13, 2007); *Quapaw Tribe of Okla. v. ASARCO Inc.*, 2007 WL 1203016 (N.D.Okla. Apr.23, 2007); *B.H. v. Gold Fields Mining Corp.*, No. 04–CV–0564–CVE–PJC, 2007 WL 439031 (N.D.Okla. Feb.1, 2007); *B.H. v. Gold Fields Mining Corp.*, No. 04–CV–0564–CVE–PJC, 2007 WL 128224 (N.D.Okla. Jan.11, 2007); *Koger v. ASARCO Inc.*, No. 02–CV–520–H(C), 2003 WL 25684987 (N.D. Dist. June 24, 2003); *Reeves v. ASARCO Inc.*, No. 02–CV–879–H(C), 2003 WL 25684986 (N.D. Dist. June 24, 2003); *Herd v. ASARCO Inc.*, No. 01–CV–891–H(C), 2003 WL 25847423 (N.D.Dist. May 28, 2003).

7. 2004 Okla. Sess. Laws 1718–1722, ch. 371 (originally codified at 10 O.S.Supp.2004, §§ 7601–7606 and, for 2006 and later, codified at 27A O.S.Supp.2008, §§ 2201–2207). For purposes of this opinion, the 2004 legislation and the 2006 and 2008 amendments generally will be denoted as the Act with the reference being to the last codification unless required for clarity.

8. 2004 Okla. Sess. Laws 1720, ch. 371, § 3(A) (now codified at 27A O.S.Supp.2008, § 2203(A)). The 2004 legislation also allows a trust to make

identified in 2006, the Legislature extended the assistance plan to most renters and home owners in an area of greatest subsidence risk as well as to commercial businesses, nonprofit organizations, and others.[10] Relocation assistance includes purchase of a home owner's property at an amount comparable to housing elsewhere in the county, a payment of an amount up to twelve months rent for comparable housing elsewhere in the county, and reimbursement for moving expenses.[11] In exchange, those accepting the assistance cannot reside within one-half mile of the area until the Commissioner of Health determines it to be safe for habitation.[12] Participation in the Act's assistance program is completely voluntary, and "[n]o person shall be required to relocate under the provisions of" the Act.[13]

¶ 4 The assistance program is funded, in part, by the Oklahoma Department of Environmental Quality (ODEQ) making grants from appropriated monies to a public trust.[14] The Legislature specifically provided that the Trust "shall be subject to the Oklahoma Open Meeting Act and the Oklahoma Open Records Act."[15] Further a majority of trustees cannot come from the most affected area, and any trustee having a direct pecuniary interest in any pending decision cannot participate in the decision under the Act's terms.[16]

¶ 5 Section 2205 of the Act provides:

A. Neither the enactment of this act nor the grant of funds to a trust shall create any property right or right in action. The courts shall have no jurisdiction to entertain any action against a recipient trust, the State of Oklahoma, their officers or agents founded on a claim that the claimant should have received different or better treatment from the trust.

B. The determinations made by the trust pursuant to this relocation assistance program including, without limitation, determinations as to what constitutes the most affected area of the site, the area of greatest subsidence risk, the average rental cost of comparable housing, the average cost of comparable properties, the eligibility of any person for assistance, and the determination of the proper amount of such assistance, if any, shall be committed

---

grants to "municipalities, public trusts, or other public entities operating utility systems located within the most affected area of the site in order to lessen the debt burden on such entities as a result of relocation of families...." 2004 Okla. Sess. Laws 1721, ch. 371, § 3(D) (now codified at 27A O.S.Supp.2008, § 2203(E)).

9. Area of greatest subsidence risk is defined as the "communities in which subsurface lead and zinc mine caverns pose the greatest threat to public safety and shall include a reasonable buffer area around such communities...." 27A O.S.Supp.2008, § 2203(B)(1). Subsidence risk is a risk of the ground caving. *See* American Heritage Dictionary 1213 (2nd College ed. 1982).

10. 2006 Okla. Sess. Laws 1020–1021, ch. 226, § 2(B) (codified at 27A O.S.Supp.2008, § 2203(B)). Because the plaintiffs here were home owners in the risk area, this opinion will address only those provisions applicable to them.

11. 27A O.S.2008, § 2203(A)(2),(3), (B)(2),(3).

12. A person violating the ban against inhabiting the area is subject to a penalty equal to three times the amount they received and an injunction. *Id.* § 2204.

13. 27A O.S.Supp.2008, § 2203(D). These provisions state: "Participation in the assistance program shall be voluntary. No person shall be required to relocate under the provisions of this act." As of October 14, 2006, the Trust had received 879 applications for assistance. *See* *Cole,* 256 F.R.D. at 697.

14. For purposes of providing assistance, the Trust was required to determine the highest risk areas and was required to consult the ODEQ for a recommendation "regarding what it believes the boundaries of such an area should be." 27A O.S.Supp.2008, § 2203(I). At subsection 2203(H), the Act provides: "In addition to the expenditure of funds according to the provisions of the Lead–Impacted Communities Relocation Assistance Act, a trust receiving a grant from the Department of Environmental Quality, shall be authorized to seek and expend funds from any other source, whether public or private, to further the purposes of the trust. The funds granted to a trust by the state shall be transferred in periodic payments rather than a single lump sum." The Trust also receive some federal funds for relocation. *See* *Cole,* 256 F.R.D. at 693.

15. *Id.* § 2203(J). The Oklahoma Open Meeting Act is found at 25 O.S.2001 & Supp.2006, §§ 301–314, and the Oklahoma Open Records Act is found at 51 O.S.2001 & Supp.2006, §§ 24A.1–24A.29.

16. 27A O.S.Supp.2008, § 2203(K).

to the sole discretion of the trust based on the information available to it and shall not be subject to judicial review.

¶ 6 At least in part due to a tornado which hit Picher on May 10, 2008, damaging a large number of houses and completely destroying others, the Legislature again amended the Act.[17] The most significant change made by the 2008 legislation for purposes of the issues presented here is the addition of subsection M in section 2203. Subsection M provides:

Any person eligible to receive assistance under the provisions of the Lead–Impacted Communities Relocation Assistance Act prior to May 10, 2008, shall remain eligible to receive the same amount of assistance adjusted for the amount of any private insurance payments for storm related damage if applicable. Any property valuation or other type of relocation assistance assessment made for the purposes of the Lead–Impacted Communities Relocation Assistance Act shall be based on the value of property as it existed no earlier than January 31, 2006, and not later than May 10, 2008, and comparable to property elsewhere in the county. The trust shall be authorized to enact or amend any of its procedures or deadlines as necessary to implement the provisions of this subsection.

¶ 7 In September of 2004, the Secretary of the Environment, as trustor, and the trustees signed the Lead–Impacted Communities Relocation Assistance Trust (Trust) agreement, and the Governor accepted the beneficial interest in the Trust on behalf of the State of Oklahoma (State). The Trust agreement generally follows along the Act's lines and includes general trust provisions.

## II. THE PARTIES AND OTHERS INVOLVED WITH THE TRUST

¶ 8 At the time the petition was filed in the district court, the plaintiffs Johnny and Patty Lafalier had signed a contract with the Trust for the purchase of their property and were in the process of receiving relocation assis-

tance. Their property was damaged by the tornado, and they received private insurance for the damage. At the time the petition was filed, the plaintiff Missy Beets had transferred ownership of her property to the Trust and had received relocation assistance. The plaintiffs sought class action certification, but, at the time the petition in error was filed, the class had not been certified.

¶ 9 Larry Roberts is the Trust's operations manager and its only employee. J.D. Strong is the Secretary of the Environment. In Executive Order 2007–07, Governor Henry designated the Secretary of the Environment as having "responsibility" for the Trust. After the enactment of the 2006 amendments, the Trust contracted with Cinnabar Service Company to provide the appraisals and retained Van Tuyl and Associates to review the appraisals.[18] Roberts, Strong, and representatives of the appraisal companies attended the Trust's executive sessions.

## III. HISTORY

¶ 10 On April 2, 2009, the plaintiffs filed a petition in the district court in Ottawa County, Oklahoma, stating two causes of action: (1) The Trust had willfully violated the Open Meeting Act by allowing J.D. Strong and representatives of Cinnabar and Van Tuyl into its executive sessions with the result that their properties were undervalued, and (2) the plaintiffs were treated unequally due to the deduction of insurance proceeds from the relocation assistance offer pursuant to title 27A, section 2203(M) of the 2008 Oklahoma Statutes. The plaintiffs sought (1) class certification, (2) the appointment of an administrator to audit the Trust, to reappraise the properties, to fairly compensate the plaintiffs, to compensate for past underpayments, and to oversee the Trust's future management, (3) reimbursement of amounts deducted for private insurance or FEMA payments, (4) an order finding title 27A, sections 2203(M) and 2205 of the Oklahoma

---

17. 2008 Okla. Sess. Laws 1384–1388, ch. 299.

18. The Trust contracted with Universal Field Services to provide appraisals of qualifying prop-

erties in the initial phase of the assistance program. Universal Field Services are not involved in this appeal.

Statutes unconstitutional, (5) an order for disclosure of all minutes and other records from executive sessions which violated the Open Meeting Act, and (6) attorney fees and costs. The Trust responded asserting the affirmative defenses of sovereign immunity and estoppel, among other things.

¶ 11 The Trust filed a motion for summary judgment arguing (1) that title 27A, section 2205 is constitutional, (2) that under section 2205, the plaintiffs cannot contest the deduction of insurance payments authorized by section 2203(M), (3) that the Trust did not violate the Open Meeting Act by allowing J.D. Strong, Larry Roberts, and representatives of Cinnabar and Van Tuyl into its executive sessions, and (4) that the plaintiffs are estopped from challenging the Trust's offers because they accepted the relocation assistance benefits.[19] The plaintiffs responded and their arguments are set out and addressed below.

¶ 12 The district court granted judgment in the Trust's favor. The trial court found that title 27A, section 2205 shields the Trust from suit by invoking the government's sovereign immunity.[20] The district court also found that the Trust had the discretion to allow J.D. Strong and the appraisers' representatives into its executive sessions. Lastly, the district court found that the plaintiffs have standing to sue. The plaintiffs petitioned for appellate review, the Trust responded, and we retained the appeal for disposition [21] and solicited briefs.[22]

## IV. SUMMARY JUDGMENT, STANDARD OF REVIEW, PRESUMPTION OF CONSTITUTIONALLY

¶ 13 Under Rule 13(a) of the Rules of District Courts,[23] a party may move for summary judgment or summary disposition of any issue when the evidentiary materials filed in support of the motion show that there is no genuine issue of any material fact. The moving party must support the motion by attaching and referencing evidentiary materials supporting the party's statement of undisputed facts.[24] The opposing party must state the material facts which the party contends are disputed and attach supporting evidentiary materials.[25] The court shall grant judgment to one of the parties if it appears that there is no substantial controversy as to any material fact and that one party is entitled to judgment as a matter of law.[26]

¶ 14 Summary judgment settles only questions of law.[27] We review rulings on issues of law de novo pursuant to the plenary power of the appellate courts without deference to the district court.[28]

¶ 15 Even though the moving party must show that there is no dispute of fact and that they are entitled to judgment as a matter of law, there is a presumption that every statute is constitutional.[29] The party seeking a statute's invalidation as unconstitutional has the burden to show the statute is clearly, palpably, and plainly inconsistent with the Constitution.[30] We scrutinize a constitutional attack on a statute with great

---

19. The estoppel issue was not asserted on appeal and, thus, is not before this Court. *Reyes v. Reyes*, 2000 OK 72, n. 2, 12 P.3d 470, 471 n. 2 (Issues not raised on appeal are deemed waived.).

20. Specifically, the order states: "Thus if one were to deem Plaintiffs' claim as a tort it is the Court's belief that the legislature has the right to assert governmental immunity, and has chosen to do so outside of the Tort Claims Act by adopting 27A O.S. § 2205."

21. Okla.Sup.Ct.R. 1.24(a), 12 O.S.2001, ch. 15, app. 1.

22. *Id.* at r. 1.36(g).

23. 12 O.S.2001, ch. 2, app., r. 13(a).

24. *Id.*

25. *Id.* at r. 13(b).

26. *Id.* at r. 13(e).

27. *Rox Petrol., L.L.C. v. New Dominion, L.L.C.*, 2008 OK 13, ¶ 2, 184 P.3d 502, 504.

28. *Glasco v. State ex rel. Okla. Dept. of Corrections*, 2008 OK 65, ¶ 8, 188 P.3d 177, 181.

29. *Id.* ¶ 27, 188 P.3d at 186.

30. *EOG Res. Mktg., Inc. v. Okla. State Bd. of Equalization*, 2008 OK 95, ¶ 13, 196 P.3d 511, 519.

caution and grave responsibility.[31]

## V. TITLE 27A, SECTION 2205 OF THE OKLAHOMA STATUTES

■ ¶ 16 The district court found that the State had invoked the doctrine of sovereign immunity in title 27A, section 2205 and, thus, the plaintiffs' claims, other than the one regarding violations of the Open Meeting Act, were "immune from suit." We do not agree that section 2205 is an invocation of the State's sovereign immunity. In section 152.1 of the Governmental Tort Claims Act,[32] the Legislature invoked the doctrine of sovereign immunity for the state, including a "public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary...."[33] When the Legislature has invoked the State's sovereignty, it has done so in express, unambiguous terms as it does section 152.1 which states: "The State of Oklahoma does hereby adopt the doctrine of sovereign immunity." To construe section 2205 as an invocation of sovereign immunity would create a redundancy, which this Court will not do absent a compelling reason.[34]

¶ 17 In contrast to the title 51, section 152.1, the Legislature has created a number of statutory restrictions to judicial review of agency decisions, including withholding a cause of action.[35] When the Legislature withholds a cause of action, it also does so in

unambiguous terms as it does in section 2205. According to the Act's title and language, section 2205 provides that the Act does not create "any property right or right in action." Section 2205 further provides that the courts shall have no jurisdiction over claims that claimants should have received different or better treatment from the trust. The district court and the State misconstrue section 2205 as an assertion of sovereign immunity, rather than the Legislature's withholding a right of action. The plaintiffs contended that section 2205 contravened Article II, section 6 (courts of justice open); Article II, section 7 (due process of law); Article V, section 46 (prohibition against local and special laws on certain subjects); and Article V, section 60 (system of checks and balances).[36]

### A. ARTICLE II, SECTION 6 OF THE OKLAHOMA CONSTITUTION

■ ¶ 18 Article II, section 6 of the Oklahoma Constitution provides: "The courts of justice of the state shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice." This Court has consistently ruled that this constitutional provision is a mandate to the judiciary and not a substantive limitation on the Legislature.[37] Section 6 is not "intended to deprive the Legislature of the power to abolish reme-

---

31. *Glasco*, 2008 OK 65 at ¶ 27, 188 P.3d at 186.

32. 51 O.S.2001, §§ 151–172.

33. 51 O.S.Supp.2007, §§ 152(12), 152.1(A).

34. *Medina v. State*, 1993 OK 121, n. 10, 871 P.2d 1379, 1383 n. 10.

35. In providing relocation assistance for persons displaced by highway and road construction, the Legislature in title 69, section 1502 provided: "[A]ll final determination made by the Commission as to a person' eligibility for, or the amount ‑ of any benefit payable by reason of this act, shall be determinative and not subject to judicial review." In making finding regarding acquisition of property this abandoned mines in title 45, section 740.5, the Legislature stated that "this provision is not intended to create new rights of action or eliminate existing immunities." In providing for the nondisclosure of certain per-

sonal information in title 36, section 307.2, the Legislature provided: "Nothing in this section shall be construed to create a private cause of action." In regard to protecting telephone records in title 21, section 1742.4, the Legislature provided: "No private right of action is authorized under this act." In *Bird v. Willis*, 1996 OK 116, 927 P.2d 547, we found that under the Oklahoma Administrative Procedures Act, citizens "are not entitled to does not allow for judicial review of the [Alcoholic Beverage Laws Enforcement] Commission's actions in granting" a liquor license.

36. For the most part, the plaintiffs' arguments in their trial brief are more extensive than in their brief before this Court. Thus, we refer to their brief in the district court to explain their positions.

37. *Adams v. Iten Biscuit Co.*, 1917 OK 47, 162 P. 938; *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 18, 12 P.3d 452, 457.

dies for future accruing causes of action (where not otherwise specifically prohibited), or to create new remedies for other wrongs as in its wisdom it might determine."[38]

¶ 19 In *St. Paul Fire & Marine Insurance Co. v. Getty Oil Co.*,[39] we upheld title 12, section 109 of the 1981 Oklahoma Statutes against an attack under Article II, section 6 of the Oklahoma Constitution. Section 109 is a statute of repose barring tort actions against builders, architects, owners, lessors, or possessors of property for damages caused by defective design or construction for injuries occurring more than ten years after completion of an improvement to real property. We noted that Article V, section 36 of the Oklahoma Constitution vests the Legislature with "the authority to define what constitutes an actionable wrong, provided of course, that such legislation may not disturb a vested right."[40] We recognized that balancing Article V, section 36 with Article II, section 6 of the Oklahoma Constitution requires a finding that Article II, section 6 is not a limit on the Legislature's authority.[41]

¶ 20 Public protection falls within the Legislature's authority, as does the authority to define what constitutes an actionable wrong unless constitutionally forbidden, *i.e.*, the Legislature cannot completely cut off an existing or vested right.[42] The plaintiffs have no constitutionally secured right under Article II, section 6 for the court to provide a remedy, where, as here, the Legislature has explicitly refused to recognize a private cause of action, leaving the plaintiffs with no wrong recognized by law.[43]

## B. ARTICLE II, SECTION 7 OF THE OKLAHOMA CONSTITUTION

■ ¶ 21 In addition to relying on Article II, section 6, the plaintiffs contend that they have a vested right to due process under Article II, section 7. Article II, section 7 provides: "No person shall be deprived of life, liberty, or property, without due process of law." Section 2203(D) of the Act provides: "Participation in the assistance program shall be voluntary. No person shall be required to relocate under the provisions of this act." The plaintiffs submit, without evidentiary support, that they are being forced from their property because services are being discontinued and the area is a health hazard.[44] While the circumstances may, in the plaintiffs' minds, leave them no reasonable alternative, they are under no obligation to accept the Trust's assistance offer. This is not a case of eminent domain where the state leaves a land owner with no choice. The fact that the plaintiffs are unhappy with the Trust's offer does not mean that the State is taking their property without due process. The plaintiffs have failed to present any evidentiary materials showing coercive state action which would violate Article II, section 7 of the Oklahoma Constitution.[45]

## C. ARTICLE V, SECTION 60 OF THE OKLAHOMA CONSTITUTION

¶ 22 Before the district court, the plaintiffs also relied on Article V, section 60 of the

---

38. *Adams*, 1917 OK 47 at ¶ 6, 162 P. at 942.

39. 1989 OK 139, ¶ 36, 782 P.2d 915, 923.

40. *Id.* at ¶ 14, 782 P.2d at 918.

41. *Id.* at ¶ 15, 782 P.2d at 919.

42. *Jaworsky v. Frolich*, 1992 OK 157, ¶¶ 14–15, 850 P.2d 1052, 1056; *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 1977 OK 70, ¶ 10, 563 P.2d 143, 146.

43. The plaintiffs' claims are based on a violation of the Act, and they do not raise any common-law causes of action.

44. *See* 12 O.S.2001, ch. 2, app., r. 13(b) (requiring respondents to a motion for summary judgment to support their contentions of disputed facts with evidentiary materials).

45. The plaintiffs also submit that section 2205 of title 27A violates Article II, section 7 because "Oklahoma courts must be open to all on the same terms without prejudice." This language has the attributes of an assertion that section 2205 violates Article II, section 6 which we previously address. If the plaintiffs are asserting an equal protection violation, they have failed to provide a legal argument sufficient for our review. Nonetheless, paragraphs 18–20 and 25–27 of this opinion adequately addresses this assertion wherein we find that no class has been singled out for disparate treatment. *See* paragraphs 30–32 of this opinion for a more through analysis of the Equal Protection Clause and Article II, section 7 of the Oklahoma Constitution.

Oklahoma Constitution as requiring a judicial inquiry into how the Trust is spending the money.[46] Article V, section 60 states:

"The Legislature shall provide by law for the establishment and maintenance of an efficient system of checks and balances between the officers of the Executive Department, and all commissioners and superintendents, and boards of control of State institutions, and all other officers entrusted with the collection, receipt, custody, or disbursement of the revenue or moneys of the State whatsoever." requires the Legislature to provide for an efficient system of checks and balances between the Executive Department's officers and all commissioners, superintendents, State institutions' boards of control, and all other officers entrusted with the collection, receipt, custody, or disbursement of the state revenues or moneys.

¶ 23 In response to this mandate, the 1907–1908 Legislature defined the duties and powers of the State Examiner and Inspector[47] (now State Auditor and Inspector), and the Legislature amended the duties and powers in 1909.[48] The titles to the 1907–1908 act and the 1909 amendment stated that they were passed in compliance with what is now Article VI, section 19 of the Oklahoma Constitution, providing for a State Examiner and Inspector, and Article V, section 60. In *State ex rel. Taylor v. Cockrell,*[49] we recognized that the 1907–1908 act and its 1909 amendment were enacted to "carry into effect the mandatory provisions of said section 60 by providing for a system of checks and balances between officers of the executive department and all other officers intrusted with the receipt, custody, or disbursement of the moneys of the state whatsoever."

■ ¶ 24 Like its enactment of the 1907–1908 act, the Legislature provided for a system of checks and balances for public trusts with the enactment of title 60, sections 176.1(B)(2) and 180.1 of the Oklahoma Statutes. Section 176.1(B)(2) provides that a public trust having the State as its beneficiary must deliver "to the State Auditor and Inspector, annual audits as provided in Section 180.1 of Title 60 of the Oklahoma Statutes." Section 180.1 requires "[t]he trustees of every trust created for the benefit and furtherance of any public function with the State of Oklahoma ... as beneficiary ... must cause an audit to be made of, including, but not limited to, the funds, accounts, and fiscal affairs of such trust, such audit to be ordered within thirty (30) days of the close of each fiscal year of the trust." The Legislature complied with the requirements of Article V, section 60 when it enacted title 60, sections 176.1(B)(2) and 180.1. Article V, section 60 requires a system of checks and balances within the Executive Department, which the Legislature has provided, but nothing in Article V, section 60 of the Oklahoma Constitution requires a judicial inquiry of a public trust's discretionary acts as the plaintiff argues. Title 27A, section 2205 does not implicate Article V, section 60 of the Oklahoma Constitution.

### D. ARTICLE V, SECTION 46 OF THE OKLAHOMA CONSTITUTION

■ ¶ 25 The plaintiffs argued before the district court that section 2205 violates Article V, section 46 of the Oklahoma Constitution. The provision of section 46 upon which the plaintiffs rely provides: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ... [r]egulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts...." The plaintiffs argue that this provision requires that they *"must* have equal access to the courthouse."

---

**46.** The whole of the plaintiffs' argument that title 27A, section 2205 violates Article V, section 60 of the Oklahoma Constitution is found on page 8 of their brief filed in the district court. The plaintiffs state: "Additionally, Article V, § 60 [of] our Constitution requires a system of checks and balances concerning public boards entrusted with custody or disbursement of monies. A statute which attempts to immunize [the Trust] from judicial inquiry on how it is spending public money violates this constitutional requirement."

**47.** 1907–1908 Okla. Sess. Laws 701–705, ch. 79.

**48.** 1909 Okla. Sess. Laws. 567–569, ch. 37 (now codified at 74 O.S.2001, § 212).

**49.** 1910 OK 374, ¶ 3, 112 P. 1000, 1002.

¶ 26 Article V, section 46 is an unequivocal mandate to the Legislature.[50] Under no circumstances is the Legislature allowed to pass a special law regarding one of the subjects listed in section 46.[51] The single question for testing a statute's compliance with section 46 is whether the statute is a general law or a special law.[52] If it is a special law dealing with one of section 46's enumerated subjects, then it does not meet section 46's mandate and is unconstitutional.[53]

¶ 27 A general law relates to all persons or things of a class, and a special law relates to particular persons or particular things within a class.[54] A general law operates uniformly upon all persons or things brought within the class by common circumstances, even though it may directly affect only a few.[55] "Special laws are those which single out less than an entire class of similarly affected persons or things for different treatment."[56] The class upon which section 2205 operates is "those owning and leasing property" in an area generally known as the Tar Creek Superfund Site and, thus, are exposed to a high risk of lead exposure or to "a serious subsidence risk."[57] The Legislature's action in withholding a cause of action under the Act in section 2205 operates uniformly across the class of persons placed at health risk and property damage in the defined area. No part of the class is separated for different treatment. Because section 2205 operates uniformly on the whole class, it is a general law under Article V, section 46 of the Oklahoma Constitution.[58]

50. *Reynolds v. Porter*, 1988 OK 88, ¶ 17, 760 P.2d 816, 822.

51. *Id.*

52. *Id.*

53. *Id.*

54. *Id.* ¶ 14, 760 P.2d at 822.

55. *Id.*

56. *Id.*

57. 27A O.S.Supp.2008, § 2202(D).

58. The plaintiffs argue that they *"must* have equal access to the courthouse" and that title 60, section 176.1 guarantees them access to the courthouse. The plaintiffs admit that, under the rules of statutory construction, title 27A, section 2205 controls over title 60, section 176.1. Even so, they continue that the court should apply title 60, section 176.1 because they have shown that section 2205 is unconstitutional, citing Article II, sections 6 and 7 of the Oklahoma Constitution. Because we have found title 27A, section 2205 does not violate these constitutional provisions, the plaintiffs' argument regarding section 176.1 has no application here.

The plaintiffs also contend that the Trust agreement and the appraisal contracts are evidence that title 27A, section 2205 should not prevent them from bringing suit against the Trust for under evaluating their property. The Trust agreement provisions on which they rely provide:

All persons, firms, associations, trusteeships, corporations, municipalities, governments, and all agents, agencies and instrumentalities thereof, contracting with any Trustee or Trustees, permanent or Temporary or both, shall take notice that all expenses and obligations, and all debts, damages, judgments, decrees or liabilities incurred by any Trustee or Trustees, permanent or Temporary or both, and any of the foregoing incurred by any agent, servant, or employee of such Trustee or Trustees, in the execution of the purposes of this Trust, whether arising from contract or tort, shall be solely chargeable to, and payable out of the Trust Estate.... [T]he foregoing shall not apply to any willful or grossly negligent breach of trust of any said Trustee.

. . .

The Trustees shall, in the name of the Trust as hereinabove set forth, or in their names as Trustees, bring any suit or action which, in their judgment, shall be necessary or proper to protect the interests of the Trust, or to enforce any claim, demand or contract for the Trust or for the benefit of the Trust; and they shall defend, in their discretion, any action or proceeding against the Trust or the Trustees or agents, servants or employees thereof. And the Trustees are expressly authorized, in their discretion, to bring, enter, prosecute or defend any action or proceeding in which the Trust shall be interested, and to compromise any such action or proceeding and discharge the same out of the Trust property and assets; and the Trustees also are expressly authorized to pay or transfer out of the Trust property or assets such money or property as shall be required to satisfy any judgment or decree rendered against them as Trustees, or against the Trust, together with all costs, including court costs, counsel and attorneys' fees, and also to pay out of the Trust property and assets such sums of money, or transfer appropriate property or assets of the Trust, for the purpose of settling, compromising, or adjusting any claim, demand, controversy, action or proceeding, together with all costs and expenses con-

## VI. TITLE 27A, SECTION 2203(M) OF THE OKLAHOMA STATUTES

¶ 28 We have found title 27A, section 2205 of the Oklahoma Statutes to be constitutional against the plaintiffs' challenges, but section 2205 does not ban all claims against the Trust. Section 2205 bans claims that claimants "should have received different or better treatment from the trust."[59] We find nothing in section 2205 which bars a suit seeking a declaration that title 27A, section 2203(M) is unconstitutional.[60]

¶ 29 The plaintiffs attack title 27A, section 2203(M) as unconstitutionally treating those with insurance dissimilarly from those without insurance in violation of the plaintiffs' rights to equal protection and in violation of Article V, section 59 of the Oklahoma Constitution. Article V, section 59 prohibits the Legislature from enacting a special law where a general law can be made applicable. The Fourteenth Amendment to the United States Constitution prohibits states from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Article II, section 7 of the Oklahoma Constitution is this State's counterpart.[61]

## A. EQUAL PROTECTION

 ¶ 30 Neither the Fourteenth Amendment to the United States Constitution nor Article II, section 7 of the Oklahoma Constitution prohibits all legislative classifications.[62] Rather the protections afforded by these provisions is freedom from arbitrary discrimination.[63] The plaintiffs here have not alleged that they are part of an inherently suspect classification. The fundamental right that they allege has been abused by section 2203(M) is the right to due process before their property is taken. The plaintiffs do not elaborate how section 2203(M) has taken their property or what property has been taken. Having decided earlier in this opinion that plaintiffs have failed to show any state action which is a taking of their real property, we need not address the issue further. We glean from the briefs that the plaintiffs are also complaining that their property in the amount of the insurance payments was taken without due process. The plaintiffs have failed to present evidence sufficient to show that their property was taken without due process.[64]

 ¶ 31 Plaintiffs have failed to show that title 27A, section 2203(M) is drawn upon

---

nected therewith; and all such expenditures and transfers shall be treated as proper expenses of executing the purposes of this Trust.

. . .

The appraisal contract provides that the appraiser shall secure liability insurance covering the Trust. These provisions do not authorize the plaintiffs' suit against the Trust in contravention of title 27A, section 2205. Rather, they provide for judgments to be paid out of the Trust's assets and authorize suits which are not disallowed by section 2205 or other constitutional or statutory provisions.

59. This is not to say that the plaintiffs may not seek equitable relief under the Act. 27A O.S.Supp.2008, § 2205; *see Bird v. Willis,* 1996 OK 116 at ¶¶ 24–25, 927 P.2d at 552; *Sharp v. 251st Street Landfill, Inc.,* 1991 OK 41, 810 P.2d 1270.

60. It appears from the record before this Court, that the plaintiff Missy Beets had completed the buyout of her property before section 2203(M) became effective and was not subject to the deduction of insurance payments. If indeed, Missy Beets suffered no injury under section 2203(M), she lacks standing to complain that section 2203(M) is unconstitutional. *See State ex rel. Bd. of Regents for Okla. Agric. and Mech. Colls. v.*

*McCloskey Brothers, Inc.,* 2009 OK 90, ¶ 17, 227 P.3d 133, 144.

61. The plaintiffs contend that section 2203(M) denies them equal protection of the law. Because they fail to cite to any constitutional provision in this regard, we address their argument as a violation of the Fourteenth Amendment to the United States Constitution and Article II, section 7 of the Oklahoma Constitution. Although the Oklahoma Constitution does not provide a provision similar to the Fourteenth Amendment, this Court has found that Article II, section 7 of the Oklahoma Constitution is its functional equivalent with a "definitional sweep that is coextensive." *Gladstone v. Bartlesville Ind. Sch. Dist. No. 30,* 2003 OK 30, nn. 15, 16, 66 P.3d 442, 447, nn. 15, 16.

62. *Id.* at ¶ 18, 66 P.3d at 451.

63. *Id.* at ¶ 9, 66 P.3d at 447.

64. The plaintiffs have failed to include evidence of their buyout offer, the date of the offer, the closing date for accepting the offer, the offer's terms, others who did not have insurance and received an offer, or the Trust's buyout guidelines in the record on appeal. Neither is there any evidence that the plaintiffs did not know that their buyout incentive amount would be reduced under section 2203(M) before they accepted the

an inherently suspect classification or impinges upon the plaintiffs' fundamental rights so as to be subject to heightened review.[65] Thus, the Equal Protection Clause requires only that section 2203(M)'s "classification rationally further a legitimate state interest."[66] Under the highly deferential rational-basis review, a legislative classification is constitutional if there is any conceivable set of facts which provides a rational basis for the classification.[67] We do not judge the classification for wisdom, fairness, or logic.[68]

¶ 32 Although not explicitly articulated, section 2203(M)'s obvious objective is to provide sufficient funds to those in the risk area, whether receiving insurance payments or not, to allow them to relocate while avoiding appraisal and reappraisal problems caused by damage or destruction to property from the tornado. Under section 2203(M), the Trust can avoid reappraising property after the tornado by allowing an insurance payment to substitute for a property's diminution in value caused by damage from the tornado, and assistance recipients should still have sufficient funds to relocate elsewhere in the county. We do not find the legislative classification is so arbitrary or lacks a sufficient relationship to this legislative purpose as to violate the Equal Protection Clause.

## B. ARTICLE V, SECTION 59 OF THE OKLAHOMA CONSTITUTION

¶ 33 Plaintiffs also attack title 27A, section 2203(M) as a violation of Article V, section 59 of the Oklahoma Constitution. Article V, section 59 provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted." Section 59 does not prohibit all special laws but prohibits a special law only when a general law will accomplish the legislative goal. The first prong of a section 59 analysis is the same as the Article V, section 46 analysis discussed above.[69] Here the plaintiffs contend that section 2203(M) is a special law in that it treats the buyout recipients receiving insurance payments differently than those not receiving payments. The plaintiffs contend that section 2203(M) is a special law. The plaintiffs end their analysis with the first prong but ignore the two additional prongs in an Article V, section 59 analysis. Even if section 2203(M) is a special law, it does not violate article V, section 59 unless it fails one of the other two prongs.

¶ 34 If the statute is a general law under the first prong, we need not proceed further with the analysis under section 59.[70] However, if the statute is a special law under the first prong, the analysis proceeds to the second prong.[71] The second prong inquiry is whether the legislative objective can be achieved by a general law or whether the statute addresses "a special situation possessing characteristics impossible of treatment by general law."[72] In answering the second prong inquiry, we consider "the nature and objective of the legislation as well as the conditions and circumstances under which the statute was enacted."[73] The Tar Creek site is an area which puts persons living there at health and safety risks. Sec-

---

offer. It could be that the trust had the discretion to amend or withdraw the offers at any time or for any reason. We cannot say on the record before us that (1) the plaintiffs were treated unequally or (2) their property in the form of insurance payments was taken without due process of law. After the tornado, the Trust allowed those who had previously declined its offers to reconsider. *See Cole v. ASARCO Inc.*, 256 F.R.D. 690, 694 (N.D.Okla.2009). It appears that section 2203(M) was enacted to accommodate these persons and allow them to move from damage and destroyed homes and still receive compensation. *Id.*

65. *Gladstone*, 2003 OK 30 at ¶ 9, n. 25, 66 P.3d at 447, n. 25.

66. *Id.*

67. *Id.* at ¶ 12, 66 P.3d at 448.

68. *Id.*

69. *Reynolds*, 1988 OK 88 at ¶ 17, 760 P.2d at 822.

70. Okla. Const. art. V, section 59.

71. *Reynolds*, 1988 OK 88 at ¶¶ 14–15, 760 P.2d at 822.

72. *Id.* at ¶ 15, 760 P.2d at 822.

73. *Id.*

tion 2203(M) was enacted in the wake of the May 10, 2008 tornado. The obvious objective, as we have stated, is to allow those living in the risk area to have sufficient funds to relocate while avoiding appraisal and reappraisal problems. Here there are special circumstances, and the plaintiffs have failed to even suggest general legislation which would accomplish section 2203(M)'s goal.

¶ 35 Under the third prong, we must determine if the statute is reasonably and substantially related to a valid legislative objective.[74] We addressed this in paragraph 32 and found that title 27A, section 2203(M) is reasonably and substantially related to a valid legislative objective; *i.e.,* land owners within the risk area are eligible to receive at least the comparable value of their property before the tornado damage if insurance payments from the tornado are taken into consideration. We find that the special situation of those landowners and lessors in this high risk area along with the damage from the tornado does not allow for a general law to be enacted to address the situation. The plaintiffs have failed to show that section 2203(M) violates Article V, section 59 of the Oklahoma Constitution.

## VII. THE OPEN MEETING ACT

¶ 36 Title 27A, section 2203(J) makes the Trust subject to the provisions of the Open Meeting Act. The plaintiffs complain that the Trust has violated the Open Meeting Act[75] by allowing J.D. Strong and the appraisal companies' representatives to attend the Trust's executive sessions.[76]

¶ 37 The current Open Meeting Act was enacted in 1977,[77] with the stated public policy of encouraging and facilitating "an informed citizenry's understanding of the governmental processes and governmental problems."[78] Because it was enacted for the

public's benefit, the Open Meeting Act "is to be construed liberally in favor of the public."[79]

¶ 38 Section 303 of the Oklahoma Open Meeting Act[80] states the general rule that "[n]o public body shall hold executive sessions unless otherwise *specifically* provided." (Emphasis added.) The Open Meeting Act at section 307(B)(3) provides an exception to this general rule by allowing executive sessions for the purpose of purchasing or appraising real property. Section 307(D) of the Open Meeting Act, the provision at issue here, sets out the restrictions placed on executive sessions held for the purpose of purchasing or appraising real property. Section 307(D) provides:

An executive session for the purpose of discussing the purchase or appraisal of real property *shall be limited to members of the public body, the attorney for the public body, and the immediate staff of the public body.* No landowner, real estate salesperson, broker, developer, or any other person who may profit directly or indirectly by a proposed transaction concerning real property which is under consideration may be present or participate in the executive session.

(Emphasis added.)

¶ 39 The plaintiffs contend that the first sentence of section 307(D) defines the outer limits of the persons who may attend an executive session and the second sentence places a further limitation on those persons named in the first sentence. In other words, if a member of the public body, its attorney, or its immediate staff may profit from the proposed transaction, then they must be excluded from the executive session. The Trust takes the position that the second sentence is expansive in that all those named in the first sentence may attend the executive session and anyone else who does not stand

---

74. *Id.* at ¶ 16, 760 P.2d at 822.

75. 25 O.S.2001, §§ 301–314.

76. An "[e]xecutive session of a board or governmental body is a session closed to the public." Black's Law Dictionary 559 (5th ed. 1979); *see* 51 O.S.Supp.2006, § 24A.5.

77. 1977 Okla. Sess. Laws, ch. 214, §§ 1–14.

78. 25 O.S.2001, § 302.

79. *Int'l Ass'n of Firefighters, Local 2479 v. Thorpe,* 1981 OK 95, ¶ 17, 632 P.2d 408, 411.

80. 25 O.S.2001, § 303.

to profit from the executive session may also attend.[81]

■ ¶ 40 Section 307(D) uses the phrase "shall be limited." Here, we deem "shall" as mandatory,[82] meaning anyone not listed is excluded from the executive session. Further, by listing those who may attend the executive session, the Legislature must have intended to exclude everyone not listed.[83] Section 307(D)'s clear language is an expression of legislative intent that no one other than those enumerated are allowed to attend the executive sessions wherein the appraisal or the purchase of real property is discussed.

¶ 41 Section 307(D)'s second sentence excludes any landowner, real estate salesperson, broker, developer, or any other person who may profit from the purchase or appraisal of the real property under discussion. As we construe section 307(D), any person allowed to attend the executive session in the first sentence is excluded if the person stands to profit from the transaction. This is the only plausible construction of section 307(D), and the only construction which honors both sentences of section 307(D). The Trust's position would make unnecessary section 307(D)'s first sentence because, under its position, anyone not standing to profit from

the proposed transaction could attend the executive session. We cannot acquiesce in the Trust's construction of section 307(D). "A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless." [84]

■ ¶ 42 Section 307(D) does not include J.D. Strong, who is the Secretary of the Environment, and the appraisers as persons who are allowed to attend the Trust's executive sessions. A secretary in a governor's cabinet is appointed by the Governor with the advice and consent of the state senate.[85] The duties of a secretary over a cabinet area are to (1) "[a]dvise the Governor of any policy changes or problems within the area they represent;" (2) "[a]dvise the entities represented of any policy changes or problems as directed by the Governor; and" (3) "[c]oordinate information gathering for the Legislature as requested." [86] Although Executive Order 2007-07 states that "[t]he Secretary of the Environment shall be responsible for the ... Lead–Impacted Communities Relocation Assistance Trust" this does not mean that he is responsible for the Trust's operation. Rather, he is a liaison between for the Governor and the Trust.[87] When

---

81. We are asked here to declare that under title 25, section 307(D), J.D. Strong and representatives of the appraisal companies were not authorized to be included in the executive sessions. The plaintiffs have requested as a remedy access to the Trusts' executive session records. Title 25, section 307(F)(2) provides: "A willful violation of the provisions of this section shall ... [c]ause the minutes and all other records of the executive session, including tape recordings, to be immediately made public."

82. *Wylie v. Chesser*, 2007 OK 81, ¶ 9, 173 P.3d 64, 76 ("The word 'shall' is generally treated as mandatory—a nondiscretionary command—in both contracts and statutes.").

83. *Atkinson v. Halliburton Co.*, 1995 OK 104, ¶ 23, 905 P.2d 772, 776 ("The maxim 'expressio unius est exclusio alterius,' that the expression of one thing is the exclusion of the other, aids in determining legislative intent."). The Trust relies on Attorney General opinion number 76–334 for the proposition that the "decision as to who should be present is within the sound discretion of the" Trust. Opinion number 76–334 addressed the rehiring of school personnel. The opinion is inapplicable here where the Legislature has limited and enumerated those who may attend executive sessions for the purpose of dis-

cussing appraisals and the purchase of real property. Further, this Court is not bound by the Attorney General's opinion on questions of law.

84. *Moran v. City of Del City*, 2003 OK 57, ¶ 8, 77 P.3d 588, 591.

85. 74 O.S.2001, § 10.3(B).

86. *Id.*

87. Further title 60, section 176.1(D) of the Oklahoma Statutes provides:

Except where the provisions of the trust indenture or of Section 176 et seq. of this title, or of any other law written specifically to govern the affairs of public trusts, expressly requires otherwise, the affairs of the public trust shall be separate and independent from the affairs of the beneficiary in all matters or activities authorized by the written instrument creating such public trust including, but not limited to, the public trust's budget, expenditures, revenues and general operation and management of its facilities or functions. . . .

Here the plaintiffs point to no exceptions either in title 60 or the trust indenture which would authorize the Secretary of the Environment to participate in the Trust's affairs.

attending the Trust's meetings in his capacity as the Secretary of the Environment, he is there on behalf of the Governor. Section 308 of the Open Meeting Act specifically requires: "Any meeting between the Governor and a majority of the members of any public body shall be open to the public and subject to all other provisions of this act." Section 308 cannot be avoided by having the Governor's representative attend an executive session. To so allow would gut section 308 of any real force. We conclude that the Trust has violated the Open Meeting Act by allowing persons not authorized under title 25, section 307(D) to attend its executive sessions wherein the appraisal and purchase of real property are discussed.

¶ 43 The district court incorrectly found that the Trust had not violated the provisions of the Open Meeting Act. Therefore, it did not address whether the violations were willful such that the minutes and records of the executive sessions should be immediately made public under title 25, section 307(F)(2). Thus, the question of the Trust's willfulness is a determination for the district court on remand.

### VIII. SUMMARY

¶ 44 The plaintiffs have failed to show that title 27A, sections 2203(M) and 2205 are unconstitutional. We agree with the plaintiffs that the Trust has violated the Open Meeting Act, specifically section 307(D), by allowing the Secretary of the Environment and the appraisers' representatives to attend its executive sessions held for the purpose of discussing appraisals and purchases of real property. The plaintiffs have also asked for access to the executive session records. Access to the records is allowed under title 25, section 307(F)(2) if the Trust's violation of the Open Meeting Act are willful. This is a question for the district court on remand.

■■■■■ ¶ 45 Even though we disagree with the district court's decision that the State invoked its sovereign immunity in title 27A, section 2205, we find that the Trust is entitled to judgment on the issues of the constitutionality of title 27A, sections 2203(M) and 2205.[88] The case is remanded to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE DISTRICT COURT WITH INSTRUCTIONS.**

EDMONDSON, C.J., TAYLOR, V.C.J., and HARGRAVE, OPALA, KAUGER, WATT, COLBERT, and REIF, JJ., concur.

WINCHESTER, J., (by separate writing), concurs in part and dissents in part.

WINCHESTER, J., concurring in part and dissenting in part.

¶ 1 I respectfully dissent to section VII of the majority opinion, regarding the Open Meetings Act. J.D. Strong, in his capacity as Secretary of the Environment for the State of Oklahoma, was responsible for the oversight of the Lead–Impacted Communities Relocation Assistance Trust. The district court determined it was within the sound discretion of the members of the Trust to allow Mr. Strong's presence at an executive session. The court cited 1976 OK AG 334 to support the court's decision. The court quoted a portion of the Attorney General's opinion as it made this observation:

> "[T]he opinion offers good advice to any entity seeking to allow someone into an executive session for whatever purpose where it states ... 'and the decision as to who should be present is within the sound discretion of the board *exercised in a reasonable manner based on the facts and circumstances in each instance.*'" [Emphasis added by district court.]

¶ 2 The district court used the same analysis as that quoted above to find that it was within the sound discretion of the Trustees to invite Cinnabar and Van Tuyl and Associates to attend executive sessions. The representatives of the appraisal companies contracted with the Trust to provide services on behalf

88. This Court may render the judgment which the district court should have rendered. If a district court decisions is based on incorrect reasoning but reaches the correct result, its judg-

ment is not subject to reversal. This Court may affirm the judgment below on a different legal rationale. *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 9, 10 P.3d 888, 891.

**198**

of the Trust in furtherance of the Trust's duties and may be considered staff. The court found that the presence of these people did not violate the prohibitions found in 25 O.S. § 307(D)[1]

¶ 3 The Attorney General opinion quoted by the district court has been relied on since 1976, and while the Supreme Court of Oklahoma is not bound by the Attorney General's opinion on questions of law, the Attorney General serves as legal advisor to state agencies. In *Globe Life and Accident Ins. Co. v. Oklahoma Tax Com'n*, 1992 OK 65, ¶ 8, 831 P.2d 649, 650, the Court observed:

"This Court decided the issue of whether an agency was bound by the opinion of the Attorney General in *Branch.* In *Branch,* this Court stated: 'The Attorney General is the "chief law officer" of Oklahoma. Since 1919, the Attorney General's opinions have been binding on state officials unless the opinion is inconsistent with a final determination of a court of competent jurisdiction." [*Branch Trucking Co. v. Oklahoma Tax Comm'n*, 1990 OK 41, ¶ 10, 801 P.2d 686, 690]

¶ 4 Given well-established law that A.G. opinions are binding on state officials, I conclude that the general statement in a 1976 A.G. opinion, quoted above by the district court, regarding using sound discretion concerning who may be admitted to an executive session was binding on the Trust officials. Distinguishing that opinion by noting it regarded the rehiring of school personnel does nothing to limit the generalization made by the Attorney General. Is there some reason a school board can use sound discretion in an executive session, but the Trust cannot? I conclude the Trust properly relied on that A.G. opinion. Where the appellate courts have not spoken, relying on the Attorney General's office, who serves as the attorney for state officials, is reasonable.

¶ 5 If this Court now wishes to find differently, it should not retroactively apply its opinion. Certainly the legislature would have acted to change the law if state officials subject to the Open Meetings Act had been abusing the law by relying on this A.G. opinion. But this Court now finds a violation. The penalty for willful violation of the Open Meetings Act is criminal in nature, a misdemeanor, carrying a penalty of a fine not exceeding $500.00, and/or imprisonment in the county jail not exceeding one year. 25 O.S.2001, § 314. This Court has previously held: "Wilfulness does not require a showing of bad faith, malice, or wantonness, but rather, encompasses conscious, purposeful violations of the law or blatant or deliberate disregard of the law by those who know, or should know the requirements of the Act." *Rogers v. Excise Bd. of Greer County*, 1984 OK 95, ¶ 14, 701 P.2d 754, 761. The Court of Criminal Appeals has held regarding the misdemeanor penalty:

"The third allegation is that there was no proof of criminal intent. However, the record discloses that the failure to comply with the Open Meeting Act was a willful violation. Beyond that, the criminal intent needs not be proven since this was a crime classified as in malum prohibitum."

*Hilliary v. State*, 1981 OK CR 78, ¶ 5, 630 P.2d 791, 793.

¶ 6 The opinion of this Court puts the Trust in an impossible position. Previous opinions of the Court entitle the Trust to rely on opinions of the Attorney General; in fact, they must follow those opinions unless this Court has effectively overruled them. Now, the majority opinion orders the district court to determine the Trust's willfulness in what the Court has found to be a violation. A determination of a willful violation subjects the members of the Trust to possible criminal prosecution. Public officials should not face this type of dilemma in trying to perform their duties for the citizens of Oklahoma.

¶ 7 Accordingly, I dissent to this section of the majority opinion.

1. 2006 Okla.Sess.Laws, ch. 1, § 11.